MURDOCK, Judge.
S.B.U., the father, appeals from a judgment of the Marion Juvenile Court returning custody of his daughter to D.G.B., the mother.
The parties married in July 1997. Their daughter was born in January 1998. The parties were divorced in May 2000. Apparently pursuant to the divorce judgment, which was based on an agreement of the parties, the parties were awarded “joint custody” of their daughter, but the mother was “named the custodial parent” and the father was awarded visitation.[1]
In mid-December 2003, the mother’s sisters took the daughter from the mother’s home and carried her to the hospital where the child was diagnosed with pneumonia. When the sisters took the daughter to the hospital, they apparently indicated that the mother had been using drugs and a report was made to the Marion County Department of Human Resources (“DHR”).[2] After receiving the report, Shane Harris, a DHR caseworker, informed the mother and her husband that he wanted to administer a drug screen. However, the mother and her husband admitted that they would test positive for methamphetamine if they submitted to the drug screen. Harris then informed the mother that she had two options: (1) she could voluntarily give custody of the daughter to an acceptable relative and DHR would not involve itself any further or (2) DHR could “open a case” on her and provide her with services. The mother informed Harris that she did not want to be involved with DHR and that she would give custody of the daughter to the daughter’s maternal grandmother.
*454 According to Harris, after the mother agreed to give custody of the daughter to the maternal grandmother, he believed that DHR “was kind of out of it from there.” Soon after Harris’s discussion with the mother, however, the father was informed that his daughter was in the hospital and he was apparently informed about Harris’s discussion with the mother. The father went to Harris’s office and informed Harris that he wanted custody of the daughter. Harris performed a background check on the father that confirmed that DHR had no adverse reports about him. Harris then informed the father that he should contact an attorney to assist him with obtaining custody. Thereafter, the father, the mother, and the maternal grandmother met with an attorney retained by the father.[3]
The attorney assisted the father and the mother with the preparation of a “Petition for Temporary Order” that was executed by the father and a “Consent to Temporary Order” that was executed by the mother. The petition and the consent were filed in the Marion Juvenile Court on December 22, 2003. In the petition, the father alleged that he was the biological father of the daughter and that the mother was the daughter’s “custodial parent.” The father also alleged that “[a]ll parties are in agreement that it will be in the best interest of [the daughter] that her biological father ... be granted temporary custody of said child until further order of this Court.” Further, the father alleged that “the biological mother ..., due to circumstances, is unable to care for the child.” The father requested that the juvenile court award him “temporary custody of his biological child until further order of this Court.” The mother’s consent stated: “I, the undersigned ... do hereby agree and consent for the temporary care, custody, and control of the above named child be granted to her father, [S.B.U.].”
Also on December 22, 2003, the juvenile court entered a “Temporary Order” that stated:
“Based upon the petition filed by the [father] and the [s]ame having been duly considered, it is
“ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:
“1. That the temporary care, custody and control of [the daughter] be and the same is hereby granted to [the father] until further order of this Court.
“2. That the mother of said child ... be granted reasonable, supervised, visitation rights, at the discretion of the father.”
After the temporary order was entered, the mother contacted Harris to discuss the possibility of her regaining custody of the daughter. Harris informed the mother that DHR was no longer involved in the matter and that she should hire an attorney to petition the court for custody.
In May 2004, the mother filed a “Motion for Custody” in the juvenile court, alleging that, after DHR had confronted her and *455 her husband in December 2003, she had executed “an agreement granting temporary custody of’ the daughter to the father. The mother alleged that she and her husband had not “used any drugs” since December 2003, that DHR was “not now involved in this matter,” and that it would be in the daughter’s best interest to be in the mother’s custody on both a “temporary” and a “permanent” basis.
The father filed an answer denying that the mother should have custody of the daughter. The father also filed a “Counterclaim,” alleging that a “material change of circumstances” had occurred since the entry of the juvenile court’s December 2003 order awarding him “temporary custody.” He requested that the juvenile court “[m]odify the Order heretofore rendered in this cause by awarding to [the father] the care, custody and control of the minor child of the parties.”
After an ore tenus proceeding, the juvenile court entered a judgment in August 2004. In the judgment, the juvenile court awarded the mother custody of the daughter based on its finding that such was “in the child’s best interest and that the benefit to the child will outweigh the inherent disruptiveness.” The juvenile court awarded the father visitation.
The father appeals. He contends that the juvenile court “erred as a matter of law in ordering removal of custody from [him] absent any evidence of his unfitness or evidence that the transfer would ‘materially promote’ the child’s welfare.” The father also contends that the mother did not offer sufficient evidence to satisfy the burden of proof prescribed by Ex parte McLendon, 455 So.2d 863 (Ala.1984), which the father contends was the applicable burden of proof. However, because we conclude that the juvenile court lacked subject-matter jurisdiction to address the mother’s “Motion for Custody” and the father’s “Counterclaim,” we need not address the merits of the father’s contentions.'
It is well settled that “subject-matter jurisdiction may not be waived; a court’s lack of subject-matter jurisdiction may be raised at any time by any party and may even be raised by a court ex mero motu.” • C.J.L. v. M.W.B., 868 So.2d 451, 453 (Ala.Civ.App.2003); see, e.g., Ex parte Norfolk S. Ry. Co., 816 So.2d 469, 472 (Ala.2001) (“We are obliged to recognize an absence of subject-matter jurisdiction obvious from a record, petition, or exhibits to a petition before us.”). A judgment entered by a court that lacks subject-matter jurisdiction is void. See C.J.L., 868 So.2d at 454; see also J.B. v. A.B., 888 So.2d 528 (Ala.Civ.App.2004).
The juvenile court is a court of limited jurisdiction. See § 12-15-30, Ala. Code 1975; J.D.R. v. M.M.E., 898 So.2d 783 (Ala.Civ.App.2004). Although a juvenile court has jurisdiction to determine custody when a “child is otherwise before the court,” Ala.Code 1975, § 12-15-30(b)(1), i.e., when the juvenile court has an independent basis for jurisdiction, the juvenile court does not otherwise have jurisdiction over custody disputes between divorced parents absent allegations that emergency circumstances exist that threaten a child’s welfare or allegations that a child is dependent. See Ex parte K.S.G., 645 So.2d 297 (Ala.Civ.App.1992); see also P.R.G. v. W.P.R., 590 So.2d 913, 914 (Ala.Civ.App.1991) (“once a circuit court has acquired jurisdiction over a child pursuant to a divorce and decides the question of custody, that court retains jurisdiction over custody until the child reaches majority”). Compare Carter v. Jefferson County Dep’t of Pensions & Sec., 496 So.2d 66 (Ala.Civ.App.1986) (holding that a juvenile court had jurisdiction to decide custody despite a previous custody *456 award in a divorce proceeding because the case was not a custody dispute between the parents; instead, DHR had filed a dependency petition).
After - carefully reviewing the record, we conclude that no basis existed for the juvenile court to exercise jurisdiction over the mother’s “Motion for Custody” or the father’s “Counterclaim.”[4] None of the pleadings contained allegations that the daughter was a dependent child or that any emergency circumstances existed concerning the daughter’s custody; nor was DHR made a party to the proceedings. Likewise, no argument was made at trial that the daughter was a dependent child or that any emergency circumstances existed that might require a custody order from the juvenile court. Instead, this cause involved a custody dispute between two divorced parents who had apparently initially agreed to a custody arrangement as part of a divorce judgment and who subsequently agreed to temporarily change that arrangement to prevent the State, through DHR, from becoming formally involved in decisions regarding the custody of their child.
Accordingly, the August 2004 judgment is void and it will not support an appeal. Carter v. Hilliard, 838 So.2d 1062, 1064 (Ala.Civ.App.2002). We therefore dismiss the father’s appeal and direct the juvenile court to set aside its August 2004 judgment.
APPEAL DISMISSED WITH INSTRUCTIONS TO THE JUVENILE COURT.
PITTMAN and BRYAN, JJ., concur.
CRAWLEY, P.J., and THOMPSON, J., concur specially, with writings.

. A copy of the divorce judgment is not contained in the record.

. In the fall of 2003, DHR had also investigated reports that the mother and her husband were engaged in the manufacturing of methamphetamine.

. We note the strong custodial presumption afforded by our law to natural parents, see, e.g., Ex parte Teny, 494 So.2d 628 (Ala.1986), and the fact that the actual custodial transfer eventually accomplished in this case was to the father. DHR had no information indicating that either the child’s maternal grandmother or the child's father, who we also note had visitation rights with the child pursuant to the parties’ 2000 divorce judgment, would be unfit custodians for the child. DHR and Harris apparently made an evaluation, which is DHR’s administrative responsibility in the first instance, that under the circumstances the child was not one who needed the "care and protection” of the State acting through DHR. See § 38-2-6(10), Ala.Code 1975; see also § 12-15-l(10)(n), Ala.Code 1975 (defining "dependent child” as one who needs the "care and supervision” of the State).

. Based on our review of the record, it does not appear that a basis for jurisdiction existed when the father filed his "Petition for Temporary Order” either. However, whether the juvenile court had jurisdiction to consider the father's petition for temporary order and to enter the resulting order is not directly before us in this appeal.