1 So.3d 1048 (2008)
M.B.L.
v.
G.G.L.
2070271.
Court of Civil Appeals of Alabama.
July 18, 2008.
Billy J. Sheffield II, Duncan, for appellant.
Amy M. Shumate, Dothan, for appellee.
PER CURIAM.
This appeal, taken by M.B.L. ("the mother") from a judgment entered by the Houston Juvenile Court in a dependency action involving a minor child, G.L. ("the child"), concerns the power of an Alabama trial court to enter a judgment pertaining to custody of a child despite being informed at trial that a court of another state has entered a custody judgment as to that child.
The proceedings in the juvenile court began in February 2007, when an attorney representing the Houston County Department of Human Resources ("DHR") filed a petition alleging that the child was dependent and was in "immediate or threatened danger of physical and/or emotional harm" warranting immediate removal from the mother's custody. In preparation for a subsequent "72-hour" hearing, DHR filed a "fact sheet" and a report that, taken together, identified the child's parents and, among other things, revealed that the child's father, G.G.L. ("the father"), a resident of Jacksonville, Florida, had been divorced from the mother in 2003 and had been paying child support to the mother. The juvenile court added the parents as *1049 parties to the action, directed the mother to cooperate with DHR representatives, and set the case for a May 2007 hearing; after that hearing, the juvenile court noted that the parties were "making progress" and continued the matter generally.
In August 2007, DHR filed a second petition in the juvenile court in which the child was again alleged to be dependent in that, DHR averred, the mother had "displayed erratic behavior," had taken multiple psychotropic medications without a timely prescription, had "displayed slurred speech" and "inappropriate behaviors," had not timely claimed the child from school, and had declined to submit to drug testing. The father also filed a petition in the juvenile court in which he averred that the child was dependent, that he had had regular and extensive visitation with the child in the past, and that he would be a proper custodian of the child. At a subsequent "72-hour" hearing, the juvenile court transferred legal custody of the child to DHR pending a final hearing but placed the child with the father in Florida.
On November 29, 2007, the juvenile court opened a testimonial hearing on the dependency petitions filed by DHR and the father. On that date, a DHR social worker testified that she knew that the mother and the father had had at least two previous disputes concerning the child's custody, and counsel for the father objected to the introduction of evidence of a domestic-battery charge arising from conduct that allegedly had "occurred before the last custody hearing took place in Florida." Following an adjournment, the juvenile court's hearing was reconvened on December 6, 2007, one day after the mother's attorney had been permitted by the juvenile court to withdraw over a matter of alleged nonpayment of fees; the mother's requests for a continuance to allow her an opportunity to retain substitute counsel were denied. At the reconvened hearing, in response to questioning of the father by the mother, counsel for the father stipulated that a Florida court had entered an order permitting the mother to relocate with the child to Alabama subject to visitation rights held by the father. The juvenile court admonished the mother that she would not be allowed to relitigate matters involved in the divorce, stating an intention to "rule on who's going to have custody of the [child] ... based on what I think is in [the child's] best interest."
On December 13, 2007, the juvenile court entered a judgment determining the child to be a dependent child and transferring legal custody of the child to the father subject to the mother's visitation rights. Seven days later, the mother, represented by new counsel, filed a timely postjudgment motion averring that a new trial should be ordered or a new judgment entered awarding her custody of the child. In that motion, the mother specifically asserted, among other things, that the juvenile court lacked jurisdiction to decide who should have custody of the child and that the juvenile court had erred in permitting the mother's former attorney to withdraw during the adjournment of the hearing without allowing a continuance to locate substitute counsel. The juvenile court denied the postjudgment motion, after which the mother appealed.[1]
The mother's brief on appeal raises two issues: (1) whether the juvenile court erred in exercising jurisdiction because the mother and the father were divorced in Florida, and (2) whether the juvenile court erred in denying the mother's request for *1050 a continuance following the withdrawal of her previous counsel.
We first consider the mother's jurisdictional challenge to the juvenile court's judgment. We note that the principal case relied upon by the father, S.B.U. v. D.G.B., 913 So.2d 452 (Ala.Civ.App. 2005), correctly notes that "`subject-matter jurisdiction may not be waived; a court's lack of subject-matter jurisdiction may be raised at any time by any party and may even be raised by a court ex mero motu."' 913 So.2d at 455 (quoting C.J.L. v. M.W.B., 868 So.2d 451, 453 (Ala.Civ. App.2003)). Our review of that question is de novo, a principle that is particularly apt in this context, in which both the mother and the father have based their arguments regarding the juvenile court's jurisdiction in this case upon cases in which an Alabama circuit court has previously divorced parents of a child brought before an Alabama juvenile court by a dependency or custody petition. See S.B.U., 913 So.2d at 453; Carter v. Jefferson County Dep't of Pensions & Sec., 496 So.2d 66 (Ala.Civ. App.1986). This case, however, involves the competing custody claims of parents who were divorced by a court of another state, i.e., Florida.
In the context of this case, the jurisdiction of the juvenile court to enter its judgment must be assessed under the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), codified in Alabama at § 30-3B-101 et seq., Ala.Code 1975.[2] The UCCJEA addresses jurisdiction in matters that may be classified within the definition of a "child custody proceeding," including dependency proceedings in which the issue of a child's custody may arise. Ala.Code 1975, § 30-3B-102(4). Under the UCCJEA, an Alabama court, such as the juvenile court in this case, may enter a "modification" judgment, i.e., one that "changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same child" by a court of another state, only when (1) the other state's court has determined either that it no longer has continuing exclusive jurisdiction or that it is no longer a convenient forum; or (2) the child, the child's parents, and any person acting as a parent no longer live in the other state. Ala. Code 1975, §§ 30-3B-102(11) and 30-3B-203.
To aid in ascertaining whether a court of another state has exclusive jurisdiction to enter a custody judgment, the UCCJEA requires each party in a child-custody proceeding, either in the body of its first pleading or in an affidavit made an exhibit to that pleading, to state under oath whether that party "[k]nows of any proceeding that could affect the current proceeding, including proceedings for enforcement." Ala.Code 1975, § 30-3B-209(a)(2). Neither DHR nor the father, by pleading or by affidavit, identified the Florida divorce proceedings that had originally addressed the custody of the child, nor any modification or enforcement proceedings subsequent to that divorce. Moreover, although parties to child-custody proceedings in Alabama have "a continuing duty to inform the court" of proceedings in any state "that could affect the current proceeding," § 30-3B-209(d), the father filed no further documents supplementing his August 2007 dependency petition. Likewise, although DHR filed court reports and statements alluding to the Florida litigation history involving the mother, the father, and the child, the existence of the previous Florida custody proceedings was not expressly brought to the attention of the juvenile court until the first day of the final hearing. However, after the existence of the Florida litigation had been *1051 brought to the attention of the juvenile court, that court opined that, because the father had appeared through counsel at trial and had presented evidence, he had somehow "given up" any objections to jurisdiction. The father similarly asserts in his appellate brief his "consent" in the juvenile court to that court's exercise of jurisdiction as a sufficient basis to establish jurisdiction.
However, in the context of a custody matter controlled by the UCCJEA, "jurisdiction to make a child custody determination is subject matter jurisdiction," and "an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under the [UCCJEA] is ineffective." Ala.Code 1975, § 30-3B-201, Official Comment (emphasis added). Stated another way, "[s]ubject-matter jurisdiction cannot be waived." Ex parte Punturo, 928 So.2d 1030, 1033 (Ala. 2002). At the time that the juvenile court entered its judgment, the father remained a resident of Florida, and the record does not reveal that the Florida court that had previously heard and determined the custody matters involving the father, the mother, and the child has relinquished its continuing exclusive jurisdiction under the UCCJEA to the juvenile court.
We have not overlooked the possibility that the juvenile court might have been justified in taking jurisdiction over the proceedings by the emergency conditions set forth in DHR's pleadings concerning the threat of mistreatment of the child (which, DHR averred, warranted a finding at that time that the child was dependent). See generally T.B. v. T.A.P., 979 So.2d 80, 88 (Ala.Civ.App.2007). Under Ala.Code 1975, § 30-3B-204, which addresses "temporary emergency jurisdiction," "the fact that another state has obtained and is exercising jurisdiction over a custody issue involving the same children is irrelevant." Id. However, even when the exercise of temporary emergency jurisdiction might be appropriate, that jurisdiction is extremely limited, allowing the court to make only such temporary orders as are necessary "to protect the child until the state that has jurisdiction under [Ala.Code 1975, §§ 30-3B-201 through 30-3B-203] enters an order." Ala.Code 1975, § 30-3B-204, Official Comment. A court exercising temporary emergency jurisdiction in the context of a preexisting custody judgment of another state, as in this case, must "specify in the [judgment] a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under Sections 30-3B-201 through 30-3B-203." Ala.Code 1975, § 30-3B-204(c). A juvenile court of this state may not rely on temporary emergency jurisdiction to transfer custody for an indefinite period based on the best interests of the child, regardless of the existence of the facts pleaded by DHR in its dependency petitions.
Because the juvenile court had no jurisdiction to enter its judgment awarding custody of the child to the father, that judgment is void. The mother's appeal from that judgment is dismissed, albeit with instructions to the juvenile court to vacate its void judgment. Any further proceedings in the juvenile court should be conducted in adherence to the provisions of the UCCJEA, especially those regarding communication with other courts (see, e.g., Ala.Code 1975, § 30-3B-110). In light of our jurisdictional conclusion, we pretermit consideration of the mother's second issue.
APPEAL DISMISSED WITH INSTRUCTIONS TO THE JUVENILE COURT.
All the judges concur.
NOTES
[1] The juvenile court has certified the record as being adequate for appellate review. See Rule 28(A)(1)(a), Ala. R. Juv. P.
[2] Florida has also enacted the UCCJEA. See Fla. Stat. § 61.501 et seq.