PER CURIAM.
M.M.T. (“the mother”) petitions for a writ of mandamus directing the DeKalb Juvenile Court (“the juvenile court”) to enter an order dismissing the child-custody proceeding filed by M.B. (“the father”). We grant the petition and issue the writ.
Before their marriage, the parties and the mother’s older child from another relationship resided with the father’s family in Alabama. During that time the mother became pregnant with R.D.B. (“the child”). Thereafter, the father, who was serving in the United States Army, was given notice that he was to be stationed in Colorado; therefore, the parties moved to Colorado, where they were married on October 3, 2012, and where the child was born on October 30, 2012.
The father was discharged from the military on January 18, 2013, and on February 15, 2013, the mother, the father, the mother’s older child, and the child traveled to Alabama. The child had never been in Alabama before February 15, 2013. That same evening the parties had an argument regarding the purpose of the trip from Colorado to Alabama. The mother and the mother’s older child returned to Colorado on February 18, 2013. The child remained in Alabama with the father.
On February 19, 2013, the mother filed a petition in the El Paso County District Court of Colorado (“the Colorado court”) seeking a divorce from the father and implementation of “abduction prevention measures.”[1] The materials included for our review include an affidavit indicating that the father was served with the mother’s petition on February 22, 2013. On February 21, 2013, the father filed a petition for emergency custody of the child in the juvenile court, in which he alleged that the mother had abandoned the child after the mother had displayed erratic behavior. The father’s petition indicated that the mother had “left the state” but did not assert that the juvenile court had acquired jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (“the UCCJEA”), § 30-3B-101 et seq., Ala.Code 1975.[2] See § 30-3B-204, Ala. Code 1975. That same day the father’s attorney filed an affidavit, which stated that “no effort ha[d] been made to notify the [mother] of this filing due to the erratic behavior displayed by the [mother,] which was related to me by [the father].” The juvenile court entered an order awarding ex parte temporary emergency custody of the child to the father on February 28, 2013; among the exhibits attached to the mother’s petition for the writ of mandamus is a certified-mail receipt for a summons and a copy of the father’s petition that was served upon the mother *730 that same day. At the time of the parties’ filings, the child was almost four months old and had been in Alabama for less than one week.
On March 5, 2018, a hearing was held in the Colorado court, which the father attended telephonically. On March 11, 2013, the father amended his petition in the juvenile court to seek a divorce from the mother and requested a transfer of the action to the DeKalb Circuit Court (“the circuit court”). According to the juvenile court’s October 9, 2013, judgment, the juvenile court was aware that the mother had filed a petition in the Colorado court at some time before March 21, 2013, because it states that a conference call with the Colorado court that was scheduled for that date “did not take place.” On April 11, 2013, the mother, acting pro se, filed a response to the father’s motion to transfer the action, in which she argued that the juvenile court lacked jurisdiction over the father’s action pursuant to the UCCJEA. On April 25, 2013, the juvenile court entered an order scheduling a hearing.
On May 23, 2013, the Colorado court entered a judgment determining that Colorado was the child’s home state pursuant to the UCCJEA, awarding temporary custody of the child to the mother, requiring that the child be returned to Colorado that same day, and noting that the juvenile-court judge had not returned its telephone calls. Thereafter, the juvenile court and the Colorado court communicated and agreed to hold a UCCJEA conference on June 4, 2013. The juvenile court informed the Colorado court that there might be another related action filed in the circuit court.
The mother’s attorney filed a notice of limited appearance contesting the jurisdiction of any Alabama court over the father’s action, and a hearing occurred on August 19, 2013, at which the juvenile court heard testimony ore tenus. The materials provided to this court contain three unsigned filings — the mother’s amended response to the father’s motion to transfer, the mother’s motion for an emergency hearing, and the mother’s “Amended Motion to Dismiss Original Ex parte Petition” — which, although they lack any indication that they were filed in the juvenile court, were apparently filed, because the juvenile court specifically noted these filings in its July 9, 2013, order scheduling the August 19, 2013, hearing and in its October 9, 2013, judgment.
The juvenile court’s October 9, 2013, judgment states the following findings. The father initiated a child-custody action on February 21, 2013, when he filed in the juvenile court his petition for emergency custody of the child alleging that the mother had abandoned the child, and the juvenile court entered an order granting the father temporary emergency custody of the child on February 28, 2013. Before a hearing took place in the juvenile court, the father amended his petition to seek a divorce from the mother and sought a transfer of the action to the circuit court. The juvenile court’s October 9, 2013, judgment states that it was aware that no UCCJEA conference with the Colorado court had taken place, that the Colorado court had entered a judgment in the action initiated by the mother, and that the mother had alleged that the juvenile court lacked jurisdiction over the action initiated by the father pursuant to the UCCJEA. However, the judgment states that the mother submitted to the jurisdiction of the juvenile court with her “pro se filing of April 11.”[3]
*731 The testimony presented at the August 19, 2013, hearing and many of the findings recited in the juvenile court’s October 9, 2013, judgment focus on the residency of the mother and of the father, the reasons for the mother’s leaving Alabama, the mother’s lack of credibility regarding her stated reasons for not returning to Alabama or seeking visitation with the child after the juvenile court granted ex parte temporary emergency custody of the child to the father, and the mother’s postings on a social-media Web site that characterized the father as a “kidnapper.”
The juvenile court discounted the mother’s contention that it lacked jurisdiction over the father’s action pursuant to the UCCJEA for two reasons. First, the juvenile court concluded that, pursuant to the UCCJEA, it had attained temporary emergency jurisdiction to enter its February 28, 2013, order because it had subsequently received evidence on August 19, 2013, that had indicated that the mother had been suicidal, had been mentally unstable, or had perjured herself. Second, the juvenile court concluded that Colorado could not properly be the child’s home state because, it stated, it was “unclear” whether the mother had informed the Colorado court of a pending proceeding in an Alabama court, although the juvenile court, in the same sentence, stated that the Colorado court was informed by the father of the Alabama proceeding.
In its October 9, 2013, judgment, the juvenile court discussed the Colorado court’s duty to immediately contact the Alabama court. The judgment reads:
“[The Colorado version of the UC-CJEA §] 14-13-204(4) requires that a Colorado court assuming jurisdiction under sections 14-13-201, 202, or 203, upon being informed that a child custody determination has been made by a court of another state under a statute similar to Colorado’s, shall immediately communicate with the court of the other state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order. The Colorado court has purportedly made attempts to contact this Court[;] however, no record has been made by the Colorado court of its efforts to resolve the emergency, protect the parties or the child, or to determine a period for the duration of the temporary order. In fact, upon review of the Colorado court record, it does not appear that that Court acknowledged the existence of any emergency whatsoever, as its order demanded immediate return of the child to Colorado, prior to any conversation with this Court resolving the emergency on which its order was based.”
(Emphasis in original; footnote omitted.)
The judgment states that the Colorado court had “obviously” not declined jurisdiction over the child-custody issue, and it notes that such a decision by the Colorado court “might be appropriate.” The judgment declares that Alabama “is in as good *732 or better position to make determinations about the child’s well-being than Colorado” because, at the time the October 9, 2013, judgment was entered, the child had lived in Alabama “twice the time that he lived in Colorado.”[4] The judgment concludes that, pursuant to the UCCJEA, the juvenile court had properly exercised “emergency jurisdiction” over the father’s action, that the juvenile court’s February 28, 2013, order remained in effect, and that the father’s action must be transferred to the circuit court because the father sought a divorce as well as a custody determination.
The mother filed her mandamus petition with this court, together with the transcript of the juvenile court’s August 19, 2013, hearing and other relevant exhibits, seeking this court’s review as to whether the juvenile court lacked jurisdiction over the father’s action.
“ ‘[T]he question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus.’ Ex parte Flint Constr. Co., 775 So.2d 805, 808 (Ala.2000) (citing Ex parte Johnson, 715 So.2d 783, 785 (Ala.1998)).
“ ‘ “ ‘A writ of mandamus is an extraordinary remedy that requires a showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.’ ” ’
“Ex parte Punturo, 928 So.2d 1030, 1033 (Ala.2002) (quoting Ex parte Bruner, 749 So.2d 437, 439 (Ala.1999), quoting in turn Ex parte McNaughton, 728 So.2d 592, 594 (Ala.1998)). ‘Subject-matter jurisdiction cannot be waived, and the lack of subject-matter jurisdiction may be raised at any time by a party or by a court ex mero motu.’ 928 So.2d at 1033 (citing Greco v. Thyssen Mining Constr., Inc., 500 So.2d 1143 (Ala.Civ.App.1986)). ‘A judgment issued by a trial court without jurisdiction is a nullity.’ 928 So.2d at 1034 (citing Ex parte Hornsby, 663 So.2d 966 (Ala.1995)).”
Ex parte Siderius, 144 So.3d 319, 323 (Ala.2013).
Although this specific basis for the juvenile court’s lack of jurisdiction was not raised by the mother, we determine that the juvenile court lacked subject-matter jurisdiction pursuant to § 12-15-114(a), Ala.Code 1975.
“Although the parties did not raise the issue of subject-matter jurisdiction, this court is ‘ “duty bound to notice ex mero motu the absence of subject-matter jurisdiction.” ’ Baldwin County v. Bay Minette, 854 So.2d 42, 45 (Ala.2003) (quoting Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 945 n. 2 (Ala.1994)).
“ ‘ “On questions of subject-matter jurisdiction, this Court is not limited by the parties’ arguments or by the legal conclusions of the trial and intermediate appellate courts regarding the existence of jurisdiction. Rather, we are obligated to dismiss an appeal if, for any reason, jurisdiction does not exist. See Ex parte Smith, 438 So.2d 766, 768 (Ala.1983) (‘Lack of subject-matter jurisdiction may not be waived by the parties and it is the duty of an appellate court to consider lack of *733 subject-matter jurisdiction ex mero motu.’ (citing City of Huntsville v. Miller, 271 Ala. 687, 688, 127 So.2d 606, 608 (1958))).”
“ ‘Ex parte Alabama Dep’t of Human Res., 999 So.2d 891, 894-95 (Ala.2008).’
“Championcomm.net of Tuscaloosa, Inc. v. Morton, 12 So.3d 1197, 1199 (Ala.2009).”
K.S. v. H.S., 18 So.3d 417, 418 (Ala.Civ.App.2009).
The father’s February 21, 2013, petition for emergency custody alleged that the mother had abandoned the child, which is an allegation supporting a finding of dependency regarding the child. Section 12-15-114(a) provides, in relevant part: “A dependency action shall not include a custody dispute between parents.” Therefore, because the father’s petition improperly sought the determination of a custody dispute between parents by attempting to invoke the dependency jurisdiction of the juvenile court, we grant the mother’s petition and instruct the juvenile court to vacate its February 28, 2013, order and its October 9, 2013, judgment for lack of jurisdiction pursuant to § 12-15-114(a).
PETITION GRANTED; WRIT ISSUED.
PITTMAN and DONALDSON, JJ„ concur.
THOMAS, J., concurs specially.
THOMPSON, P.J., concurs in the result, without writing.
MOORE, J., concurs in the result, with writing.

. The materials included for our review do not include a copy of the mother’s petition; however, the materials do include an order of the Colorado court that refers to the hearing held before the entry of that order as a hearing on “[the mother]’s Emergency Motion for Abduction Protection Measures.”

. Colorado has also adopted the UCCJEA. It is codified at Colo.Rev.Stat., § 14-13-101 et seq.

. We note that the entirety of the mother’s "pro se filing” is a challenge to the juvenile court’s jurisdiction based upon her argument that Colorado is home state of the child pur *731 suant to the UCCJEA. In the context of a custody matter controlled by the UCCJEA, "jurisdiction to make a child custody determination is subject matter jurisdiction.” § 30-3B-201, Ala.Code 1975, Official Comment.
" ' "[Sjubject-matter jurisdiction may not be waived; a court’s lack of subject-matter jurisdiction may be raised at any time by any party and may even be raised by a court ex mero motu." ’ S.B.U. v. D.G.B., 913 So.2d 452, 455 (Ala.Civ.App.2005) (quoting C.J.L. v. M.W.B., 868 So.2d 451, 453 (Ala.Civ.App.2003)). Questions of law, such as whether a court has subject-matter jurisdiction, are reviewed de novo. BT Sec. Corp. v. W.R. Huff Asset Mgmt. Co., 891 So.2d 310 (Ala.2004).”
K.R. v. Lauderdale Cnty. Dep’t of Human Res., 133 So.3d 396, 404 (Ala.Civ.App.2013).

. To the extent that the juvenile court’s judgment might indicate that Colorado is an "inconvenient forum” pursuant to § 30-3B-207, Ala.Code 1975, we note that the decision to decline to exercise jurisdiction on that basis rests with the child’s home state, which, in this case, is Colorado. See § 30-3B-102(7), Ala.Code 1975; Colo.Rev.Stat., § 14 — 13— 102(7).