642 So.2d 941 (1994)
Lisa STAMPS, et al.
v.
JEFFERSON COUNTY BOARD OF EDUCATION, et al.
1920607.
Supreme Court of Alabama.
May 20, 1994.
Carol Ann Rasmussen, Birmingham, for appellants.
Carl E. Johnson, Jr. of Bishop, Colvin, Johnson & Kent, Birmingham, for appellees.
PER CURIAM.
Lisa Stamps, David Elliott, Paul Allen, Kay Mickel, and Marilyn Benson, "special education" teachers assigned to the W.E. Burkett Center for the Multi-Handicapped, appeal from a judgment declaring that they, the Jefferson County Board of Education, and several of its officials are not violating the Nursing Practices Act, Ala.Code 1975, §§ 34-21-1 to -63 ("the NPA"), in performing certain procedures connected with the instruction of "exceptional children" at the Center. Because we conclude that the circuit court did not have jurisdiction to enter the judgment and that that judgment is therefore void, we dismiss this appeal.
Stamps, Elliott, Allen, Mickel, and Benson, none of whom is a licensed nurse, are employed by the Jefferson County Board of Education to provide instruction for "exceptional children"[1] enrolled at the Center, *942 many of whom are severely disabled. On September 14, 1992, Stamps and Elliott sued (1) the Jefferson County Board of Education, (2) Bruce Wright, superintendent of the Jefferson County Board of Education, (3) Raphael McDaniel, the director of personnel for Jefferson County schools, (4) Nell Salamone, director of special education for Jefferson County schools, and (5) Cathy Stagg, the principal at the Center, in a declaratory judgment action. (These five defendants will be collectively designated as "the Board.") The plaintiffs alleged that, as a condition of their employment, they are regularly required to perform procedures the NPA restricts to licensed nurses. More specifically, they alleged that they "and other teachers at the Burkett Center have [performed] and are compelled to perform medical procedures such as direct line feedings, gastronomy with button, insertion of tubes, suctioning of tracheotomy tubes, administration of prescribed medication, and the changing of colostomy bags." The performance of such procedures, they alleged, "constitute[s] the unauthorized practice of nursing." They also sought to enjoin the Board from requiring them to perform such duties.
Ten days later, they amended their complaint to add as plaintiffs their co-employees Allen, Benson, and Mickel. Following a bench trial on October 26-27, 1992, the court denied the requested injunctive relief and held that the challenged procedures did not violate the NPA. On appeal, the teachers reassert their contentions that they are required, as a part of their employment, to practice nursing without a license as that concept is defined in § 34-21-1.
Section 34-21-1(3)a. defines "practice of professional nursing":
"The performance, for compensation, of any act in the care and counselling of persons or in the promotion and maintenance of health and prevention of illness and injury based upon the nursing process which includes systematic data gathering, assessment, appropriate nursing judgment and evaluation of human responses to actual or potential health problems through such services as case finding, health teaching, health counselling; and provision of care supportive to or restorative of life and well-being, and executing medical regimens including administering medications and treatments prescribed by a licensed or otherwise legally authorized physician or dentist...."
(Emphasis added.) Section 34-21-1(3)b. defines "practice of practical nursing":
"The performance, for compensation, of acts designed to promote and maintain health, prevent illness and injury and provide care utilizing standardized procedures and the nursing process, including administering medications and treatments, under the direction of a licensed professional nurse or a licensed or otherwise legally authorized physician or dentist...."
(Emphasis added.) The teachers insist that their employment subjects them to the possibility of "criminal prosecution if the State Board of Nursing [chooses] to file a complaint." Reply Brief of Appellants, at 3; see also Brief of Appellants, at 18. For this proposition, the teachers cite § 34-21-7, which provides in part:
"Any person ... who ... practices professional nursing as defined in this chapter or ... practices practical nursing as defined in this chapter, unless duly licensed to do so under the provisions hereof; or uses in connection with his or her name any designation implying or tending to imply that he or she is a licensed professional nurse and licensed to practice as a registered nurse, or a practical nurse licensed to practice practical nursing as a licensed practical nurse, unless duly licensed to practice under the provisions of this chapter... shall be guilty of a Class A misdemeanor and upon conviction, shall be punished in accordance with the laws of the state of Alabama."
(Emphasis added.) The teachers assert that through this action they are "attempting to *943 enjoin the Board from forcing them to commit a misdemeanor." Reply Brief of Appellants, at 1.
The Board characterizes this action as a "purported effort" by the teachers "to enjoin the commission of a `crime' and ... protect the public from themselves [and that the effort] is nothing more than a disingenuous attempt to use the licensing statute as a means to litigate their way out of what have apparently become disagreeable portions of their work." Brief of Appellees, at 22. The Board does not dispute the teachers' contentions that many of their duties constitute "care supportive to or restorative of life and well-being," as that phrase is used in § 34-21-1(3)a., and that those duties are "designed to promote and maintain health, prevent illness and injury and provide care utilizing standardized procedures and the nursing process," as that phrase is used in § 34-21-1(3)b. However, it insists that these definitions of "nursing" are so "vague," Brief of Appellees, at 12, and "so all-encompassing... as to be all but meaningless." Id. at 15.
The Board further contends that, regardless of the meanings of the terms expressed in § 34-21-1, the teachers do not have standing to enforce the provisions of the NPA in a civil action. It insists that the only entity so authorized is the board of nursing, which, indisputably, is not represented in this action. In support of this proposition, the Board cites §§ 34-21-2, -25, and -26.
Section 34-21-2 provides in part:
"(a) There is hereby created the board of nursing, which shall be composed of 10 members to be appointed as hereinafter provided for, which shall have the duties and powers hereinafter enumerated....
". . . .
"(c) . . . .
"The board is authorized to:
". . . .
"(7) Conduct investigations, hearings and proceedings concerning alleged violations of this section or of the rules and regulations of the board;
"(8) Have the power to issue subpoenas, compel the attendance of witnesses and administer oaths to persons giving testimony at hearings; [and]
"(9) Cause the prosecution of all persons violating the provisions of this chapter and incur such necessary expenses therefor...."
Section 34-21-25 (Supp.1993) provides in part:
"(a) For disciplinary purposes, the board may adopt, levy, and collect administrative fines not to exceed $1,000 per violation and may institute any legal proceedings necessary to effect compliance with this chapter against its licensees.
". . . .
"(c) Whenever a written complaint is made to the board that a person has committed any of the acts or come within any of the provisions enumerated in subsection (b), the board shall investigate the complaint and may bring an action in its own name to hear and determine the complaint...."
Section 34-21-26 provides in part:
"After January 1, 1968, the practice of... nursing by any person who has not been issued a license under the provisions of this article, or whose license has been suspended, revoked or has expired, is hereby declared to be inimical to the public welfare and to constitute a public nuisance.... [T]he board of nursing of the state of Alabama may apply to any court of competent jurisdiction for an injunction to enjoin any person from practicing ... nursing, who has not been issued a license to practice ... nursing or whose license therefor has been suspended or revoked or has expired....

"Injunctions under this section shall be applied for in accordance with the civil remedies and procedures of the state of Alabama under article 10 of chapter 6 of Title 6 of this Code [§ 6-6-503(a)] and under the Alabama Rules of Civil Procedure."
(Emphasis added.)
The Board places particular emphasis on the section referenced in the emphasized portion of § 34-21-26, that is, Ala.Code 1975, § 6-6-503(a), which provides: "The unauthorized *944 or unlawful practice of any profession... by any person ... may be enjoined by any court of competent jurisdiction on complaint brought in the name of any public body or officer having authority conferred by statute to regulate or to license the activity engaged in by such person...."
These and other points are thoroughly argued by both sides in this dispute. In our view, however, neither side has articulated precisely the issue that we perceive to be dispositive. That issue is whether an action brought by special education teachers against their employers seeking a judgment construing the NPA and declaring that their duties subject them to prosecution by the board of nursing for the unlicensed practice of nursing presents a controversy that is justiciable under the Declaratory Judgment Act, Ala.Code 1975, §§ 6-6-220 to -232, where the action does not include the board of nursing. We hold that it does not.
Section 6-6-222 authorizes the courts of this state to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." The Declaratory Judgment Act does not, however, "empower courts to decide moot questions, abstract propositions, or to give advisory opinions, however convenient it might be to have these questions decided for the government of future cases." Town of Warrior v. Blaylock, 275 Ala. 113, 114, 152 So.2d 661, 662 (1963) (emphasis added); see also Underwood v. State, 439 So.2d 125, 128 (Ala.1983); Shadix v. City of Birmingham, 251 Ala. 610, 38 So.2d 851 (1949).
"Actions or opinions are denominated `advisory,' "and, therefore, not justiciable, "when there is an insufficient interest in the plaintiff or defendant to justify judicial determination, where the judgment sought would not constitute specific relief to a litigant ... or where, by reason of inadequacy of parties defendant, the judgment could not be sufficiently conclusive." E. Borchard, Declaratory Judgments 31 (1934) (emphasis added). "`Actions for declaratory judgments brought by individuals to test or challenge the propriety of public action often fail on this ground,... because the ... public officer or other person selected as a defendant has ... no special duties in relation to the matters which would be affected by any eventual judgment.'" Rogers v. Alabama Bd. of Educ., 392 So.2d 235, 237 (Ala.Civ.App.1980) (emphasis added) (quoting E. Borchard, Declaratory Judgments 76 (2d ed. 1941)). "`The absence of adversary or the correct adversary parties is in principle fatal. A mere difference of opinion or disagreement or argument on a legal question affords inadequate ground for invoking the judicial power.' " Id. (emphasis added).
These considerations were, in effect, codified in § 6-6-229, which provides: "The court may refuse to enter a declaratory judgment where such judgment, if entered, would not terminate the uncertainty or controversy giving rise to the proceeding." (Emphasis added.) For the following reasons, we conclude that a judgment in this action would not "terminate the uncertainty" of which the plaintiffs complain.
Section 6-6-227, in pertinent part, provides: "All persons shall be made parties who have, or claim, any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." (Emphasis added.) Conspicuously absent from this case of first impression is the board of nursing, the only entity expressly charged with enforcing the NPA and the one from which a prosecutionentirely hypothetical at this pointwould originate. Pursuant to § 6-6-227, that entity would not be bound by a court's construction in this action of the NPA's relevant provisions. A "judgment" in this case would, therefore, represent a mere advisory opinion, one that the board of nursing could ignore if it actually began a prosecution based on these identical facts. In other words, if a court were to conclude that the contested duties did not offend the NPA, the board of nursing, not being bound by that construction of the NPA, could still prosecute the plaintiffs for the unlicensed practice of nursing. The circuit court's declaratory "judgment" entirely fails to "terminate the uncertainty" the plaintiffs seek to resolve, § 6-6-229, and it is quite likely that a court will be required someday to consider the same issues in another action. Indeed, *945 this case exemplifies the interaction of § 6-6-227 and § 6-6-229, the purpose of § 6-6-229, and the rationale of the rule precluding courts from giving advisory opinions.
Consequently, we hold that the absence of the board of nursing in an action seeking a judgment construing the NPA and declaring that special education teachers are subject to prosecution by the board of nursing for the unlicensed practice of nursing renders the controversy nonjusticiable. The trial court lacked subject matter jurisdiction to entertain this action; therefore, its judgment is void.[2]Underwood v. State, 439 So.2d 125, 128 (Ala.1983). Because "a void judgment will not support an appeal, it follows that the appeal is due to be dismissed." Id.
APPEAL DISMISSED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON, INGRAM and COOK, JJ., concur.
ALMON, J., concurs in part and dissents in part.
ALMON, Justice (concurring in part and dissenting in part).
Joinder of parties is governed by Rule 19, Ala.R.Civ.P., "Joinder of Persons Needed for Just Adjudication." It reads, in part:
"(a) Persons to Be Joined if Feasible. A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in his absence complete relief cannot be afforded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may ... (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party....
"(b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable...."
I agree with the majority that the Board of Nursing was a party "needed for just adjudication," a necessary party, in this action seeking a declaration that the duties imposed on the plaintiffs required them to practice nursing without a license. However, I do not agree that the absence of the Board of Nursing requires a dismissal of the appeal.
In J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834 (Ala.1981), the Court said:
"[F]ailure of the plaintiff or the trial court to add a necessary and indispensable party, and of the defendant to raise the absence of such party in his or her pleadings, does not necessarily dispose of the issue. This defect can be raised for the first time on appeal by the parties or by the appellate court ex mero motu."

406 So.2d at 850, citing Mead Corp. v. City of Birmingham, 350 So.2d 419 (Ala.1977), and Davis v. Burnette, 341 So.2d 118, 120 (Ala. 1976). See also Morris v. Owens, 292 Ala. 159, 290 So.2d 646 (1974). The Court in J.C. Jacobs further stated, "The absence of a necessary and indispensable party necessitates the dismissal of the cause without prejudice or a reversal with directions to allow the cause to stand over for amendment. Rogers v. Smith, 287 Ala. 118, 248 So.2d 713 (1971)." 406 So.2d at 850-51. Also, in Boles v. Autrey, 554 So.2d 959 (Ala.1989),[3] the Court reversed a judgment holding that a road in question was a private, not a public, road. The Court held that failure to join the county as a party could be raised for the first time in a motion for new trial or on appeal.
The above-cited cases trace to, and many of them quote, Holland v. Flinn, 239 Ala. 390, 392, 195 So. 265 (1940), in which the Court reversed a declaratory judgment and *946 remanded the cause so "that necessary parties may be brought in by amendment, if plaintiff so desires." City of Mobile v. Gulf Development Co., 277 Ala. 431, 171 So.2d 247 (1965), was also a declaratory judgment action, and the Court, quoting Holland, reversed because of (among other reasons) the failure to join the board of water and sewer commissioners and the affected property owners.
In all of the above-cited cases in which the Court found the absence of a necessary party, the judgment was reversed and the cause was remanded; in none of the cases was the appeal dismissed.
The only decision I have found dismissing an appeal from a declaratory judgment for failure to join a necessary party is Board of Trustees of Employees' Retirement System of the City of Montgomery v. Talley, 286 Ala. 661, 244 So.2d 791 (1971). That action sought a judgment declaring unconstitutional an ordinance of the City of Montgomery, however, and the City of Montgomery was not made a defendant. The Court, in holding the judgment void for the failure to join the City, relied upon a portion of the Declaratory Judgment Act appearing at Title 7, § 166, Ala.Code of 1940 (now found at § 6-6-227, Ala.Code 1975):
"In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard...."
The Court concluded:
"The statutory requirements to make the City of Montgomery a party to the proceeding and to entitle it to be heard, in our opinion, are mandatory and jurisdictional. These requirements not having been complied with, the jurisdiction of the trial court was not invoked, and the court's decree, declaring the portion of the municipal ordinance in question unconstitutional, is void."
"It follows that the appeal must be dismissed." 286 Ala. at 667, 244 So.2d at 796. Talley is distinguishable from the other cases cited above, because the requirement of making the municipality a party in an action challenging an ordinance is a specific requirement of the Declaratory Judgment Act.
The majority does not cite a case in which an appeal from a declaratory judgment was dismissed for failure to join a necessary party. In Holland v. Flinn and City of Mobile v. Gulf Development Co., the Court reversed declaratory judgments because of the failure to join necessary parties. These holdings were followed in Rogers v. Smith, Morris v. Owens, Davis v. Burnette, Mead Corp. v. City of Birmingham, J.C. Jacobs Banking Co. v. Campbell, and Boles v. Autrey, in which, although they were not declaratory judgment actions, this Court reversed for failure to join parties deemed necessary and/or indispensable.
For the foregoing reasons, I would hold that the judgment is due to be reversed and the cause remanded because of the failure to join the Board of Nursing as a party.
NOTES
[1] The term "exceptional children" was defined in the Alabama Exceptional Child Education Act, Act No. 106, 1971 Regular Session, 1971 Ala.Acts 373 (codified at Ala.Code 1975, §§ 16-39-1 to -12). It is currently defined as follows:

"Persons between the ages of six and 21 years who have been certified under regulations of the State Board of Education by a specialist as being unsuited for enrollment in regular classes of the public schools or who are unable to be educated or trained adequately in the regular programs including, but not limited to: the mildly and moderately to severely retarded, and also the profoundly retarded; the speech impaired; the hearing impaired, deaf, and partially hearing; the blind and vision impaired; the crippled and those having other physical handicaps not otherwise specifically mentioned herein; the emotionally conflicted; those with special learning disabilities; the multiple handicapped; and the intellectually gifted."
Section 16-39-2(1). The appellees asserts that the Alabama Exceptional Child Education Act, in conjunction with the Education of the Handicapped Act, 20 U.S.C §§ 1400-85, requires them to provide services such as those implicated in this action.
[2] This Court is duty bound to notice ex mero motu the absence of subject-matter jurisdiction. Ex parte Smith, 438 So.2d 766, 768 (Ala.1983); City of Gadsden v. Head, 429 So.2d 1005, 1008 (Ala.1983); City of Huntsville v. Miller, 271 Ala. 687, 689, 127 So.2d 606, 608 (1958).
[3] Appeal after remand, 584 So.2d 519 (Ala.1991).