THOMPSON, Presiding Judge.
 

 B.W.T. appeals from a summary judgment entered by the Jefferson Circuit Court in favor of Haynes
 
 &
 
 Haynes, P.C. (“the law firm”), in the law firm’s declaratory-judgment action.
 
 [1]
 
 For the reasons stated herein, we dismiss the appeal with instructions to the trial court to dismiss the action.
 

 In 2001, B.W.T., an attorney, filed an action pro se in the United States District Court for the Northern District of Alabama alleging that his former employer had discriminated against him in violation of certain federal statutes when it terminated his employment. B.W.T. approached Kenneth D. Haynes, an attorney
 
 *816
 
 with the law firm, about representing him in that action. After initially refusing to represent B.W.T., Haynes agreed to do so. B.W.T.’s fee agreement with the law firm (“the fee agreement”) provided that the law firm would represent him in his federal-court action, and, with regard to payment for the law firm’s services, the fee agreement contained the following provisions:
 

 “2. Client will owe an attorney’s fee if attorneys are successful in recovering monies for Client or if Client decides to terminate the services of attorneys for any reason other than lack of performance. Client agrees to pay forty-five (45%) percent of all amounts recovered as a result of a judgment, settlement or otherwise, plus any out-of-pocket expenses incurred by attorneys.
 

 “3. If the action is one in which a tribunal may assess, recommend or confirm attorney’s fees against an adverse party, an award of attorneys’ fees, if any, shall not be considered part of the total ‘recovery5 for purposes of calculating the total contingent fee and shall be the property of Attorneys.”
 

 Before signing the fee agreement, B.W.T. expressed Concern to Haynes about its fairness based on the fact that if B.W.T. won his case and was able to obtain an award of attorney’s fees and costs, the law firm would receive not only those awarded fees and costs, but also 45% of the judgment, in essence being paid twice for the same work. Haynes explained that the fee agreement was the law firm’s standard fee arrangement, that it had been taken from a form created by a national employment-law trial lawyers’ association, and that the specific language of the fee agreement was necessary to protect the law firm because it was Haynes’s experience that the local federal district courts rarely awarded sufficient attorney’s fees. B.W.T. signed the agreement.
 

 Following a trial in February 2006, the jury returned a verdict in favor of B.W.T. and awarded compensatory damages in the amount of $193,990.38. To that amount, the federal district court added $38,056.50 in prejudgment interest. Because federal law allowed B.W.T. to recover attorney’s fees and costs in his action,
 
 see
 
 42 U.S.C. § 1988, he sought an award of attorney’s fees and costs. The federal district court awarded to B.W.T. attorney’s fees in the amount of $149,223 and costs in the amount of $12,651.02. Thus, in total, the federal district court awarded $393,920.90 to B.W.T.
 

 B.W.T.’s former employer appealed to the United States Court of Appeals for the Eleventh Circuit. That court affirmed the federal district court’s judgment. Thereafter, B.W.T. entered into a settlement agreement with his former employer providing that, in addition to the $393,920.90 awarded by the federal district court, the former employer would pay the attorney’s fees and costs that B.W.T. had incurred on appeal. Haynes placed the settlement amount into the law firm’s trust account.
 

 In August 2007, B.W.T. met with Haynes to determine the distribution of the funds in the law firm’s trust account attributable to B.W.T.’s federal-court action, which, with the addition of interest, had grown to $437,920. Haynes proposed to distribute $127,034.82 to B.W.T., which amount represented the judgment and the pre- and postjudgment interest on the judgment, less the 45% contingency fee called for in the fee agreement and $7,189.61 in unreimbursed costs and expenses. Haynes proposed to distribute $310,885.18 to the law firm, which amount represented 45% of the judgment and interest thereon as the contingency fee provided by the fee agreement, all of the
 
 *817
 
 attorney’s fees, costs, and expenses awarded by the federal district court and provided for in the settlement agreement, and the $7,189.61 in unreimbursed costs and expenses. B.W.T. objected to this proposed distribution as unfair. He asked if Haynes would consider taking a smaller fee, to which Haynes responded that he would not. Haynes informed B.W.T. that the amount that Haynes proposed for distribution to the law firm did not fully compensate the law firm for the number of hours it had devoted to B.W.T.’s case.
 

 After their meeting, B.W.T. sent to Haynes several cases or bar opinions from other jurisdictions that held that an attorney is not entitled to recover a contingency fee in addition to court-awarded attorney’s fees provided by statute. Haynes informed B.W.T. that he was not persuaded by those opinions, and he informed B.W.T. that he would seek an informal opinion from the Alabama State Bar (“the State Bar”). On August 22, 2007, Haynes disbursed $20,703.18 to the law firm for costs and expenses, $181,747.57 to the law firm as attorney’s fees, and $127,034.82 to B.W.T.; he indicated that all three of these amounts were not in dispute. He left the remainder of the funds in the law firm’s trust account pending resolution of the issue of how those remaining funds should be distributed.
 

 On August 30, 2007, Haynes wrote to the State Bar and requested guidance as to whether the law firm’s fee arrangement with B.W.T. breached any ethical or professional responsibility. In a letter dated September 6, 2007, an associate counsel with the State Bar responded to Haynes’s inquiry that the State Bar could not provide an opinion as to whether the execution of the fee agreement constituted a violation of the Alabama Rules of Professional Conduct because the State Bar could provide such an opinion only as to proposed conduct, not conduct in which the attorney or law firm had already engaged. The State Bar also indicated that it could not give a legal opinion as to whether the fee agreement was valid and enforceable because “[a]ny legal questions regarding the [fee agreement would] have to be resolved by a court.”
 

 On October 4, 2007, the law firm filed the present action in the Jefferson Circuit Court. In its complaint, the law firm requested a judgment “declaring the [fee agreement] between [the law firm] and B.W.T. legally valid and enforceable.” In his answer to the complaint, B.W.T. contended, among other things, that the issue involved in the case was whether the law firm’s retention of $310,885.18 from the gross proceeds of his recovery in the federal-court action constituted a double recovery for the law firm and thereby violated Rule 1.5, Ala. R. Prof. Cond.
 
 [2]
 
 He argued that the State Bar had jurisdiction over the resolution of that question. He moved the trial court to dismiss the action because the law firm had failed to join the State Bar, which, according to B.W.T., was a necessary party to any action seeking to interpret the Rules of Professional Conduct. He also contended that any declaratory judgment entered by the trial court would not resolve the underlying dispute because the State Bar was not a party to the action.
 

 On April 11, 2008, the law firm filed a motion for a summary judgment. In its supporting brief, it indicated that it sought a judgment declaring that the fee agreement was a “valid and enforceable con
 
 *818
 
 tract” and that the proposed distribution was consistent with the fee agreement and did not violate Rule 1.5, Ala. R. Prof. Cond. It contended that the fee agreement was legally valid because all the elements of a contract were present at its formation. Recognizing that the crux of the matter did not actually relate to the existence of a contract but, rather, to the question whether the fee agreement violated Rule 1.5, Ala. R. Prof. Cond., the law firm argued that the fee it charged B.W.T. for its work on his behalf was reasonable under the circumstances presented by B.W.T.’s case and, as a result, did not violate Rule 1.5.
 

 B.W.T. filed a brief in support of his motion to dismiss, which encompassed an opposition to the law firm’s summary-judgment motion. He contended that the action was due to be dismissed because: (1) it did not present a justiciable controversy that was appropriate for resolution in a declaratory-judgment action; (2) the law firm had failed to join the State Bar, which was a necessary party; (3) a declaratory judgment in the action would not resolve the controversy between the parties; and (4) the trial court should defer to the federal district court that had heard B.W.T.’s federal-court action and allow that court to resolve any issues related to attorney’s fees arising from that action. B.W.T. argued that, should the trial court decide not to dismiss the action, it should enter a judgment in his favor because, he argued, “any contingent fee contract that awards [to] an attorney fees and expenses of nearly
 
 71% of the total recovery
 
 is unfair, excessive, and unconscionable under the Rules of Professional Conduct,” and, he argued, the fee agreement was therefore unenforceable.
 

 On May 20, 2008, the trial court granted the law firm’s motion and entered a summary judgment in its favor. B.W.T. filed a motion to alter, amend, or vacate the judgment pursuant to Rule 59(e), Ala. R. Civ. P. Among other things, he argued, for the first time, that the entire $437,920 that the law firm had had on deposit in its trust account relative to B.W.T.’s federal-court action constituted the proceeds of a settlement under the terms of the fee agreement and, as a result, the entire amount was subject to the contingency-fee division under the fee agreement; i.e., he argued that he was entitled to 55% of the $437,920 and that the law firm was entitled to 45% of the $437,920. In support, B.W.T. submitted a copy of the agreement entered between his former employer and him settling B.W.T.’s federal-court action following the affirmance of the judgment in his favor by the United States Court of Appeals for the Eleventh Circuit. The trial court denied B.W.T.’s motion to alter, amend, or vacate the judgment.
 

 On September 19, 2008, B.W.T. filed a notice of appeal of the trial court’s judgment to our supreme court, which transferred the appeal to this court. On October 30, 2008, this court reinvested the trial court with jurisdiction and ordered it to enter a judgment that specifically set forth the relief that it was granting in favor of the law firm. In conformity with that order, the trial court entered the following judgment on November 12, 2008:
 

 “Pursuant to the directive issued by the Court of Civil Appeals on October 30, 2008, the court issues the following Amended Order setting out the relief granted.
 

 “The Motion for Summary Judgment filed by the Plaintiff, Haynes & Haynes, P.C., on April 11, 2008, came before this court on this date.
 

 “After due consideration thereof, the Motion is hereby GRANTED in favor of the plaintiff and against the defendant. The Court grants the plaintiffs request
 
 *819
 
 for declaratory judgment finding the contract between plaintiff and defendant legally valid and enforceable.”
 

 Because the law firm, in its summary-judgment motion, recognized that the real issue between the parties was whether the fee agreement violated Rule 1.5, Ala. R. Prof. Cond., and sought a declaration as to that issue, and because, in his response to the summary-judgment motion, B.W.T. argued that issue extensively, we interpret the trial court’s judgment as holding that the fee agreement does not violate Rule 1.5, Ala. R. Prof. Cond.
 

 On appeal, B.W.T. contends, among other things, that the law firm’s action was not appropriate for treatment as a declaratory-judgment action, that the controversy the law firm presented to the trial court was nonjusticiable, and that the trial court lacked subject-matter jurisdiction, rendering its judgment void. We agree.
 

 The Declaratory Judgment Act is found at §§ 6-6-220 to -232, Ala.Code 1975. Section 6-6-223 sets forth the basis for an action seeking a declaratory judgment:
 

 “Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.”
 

 Section 6-6-227 provides which persons or entities must be made parties to a declaratory-judgment action:
 

 “All persons shall be made parties who have, or claim, any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance, or franchise, such municipality shall be made a party and shall be entitled to be heard; and if the statute, ordinance, or franchise is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard.”
 

 Section 6-6-229 provides that a “court may refuse to enter a declaratory judgment where such judgment, if entered, would not terminate the uncertainty or controversy giving rise to the proceeding.”
 

 In
 
 Stamps v. Jefferson County Board of Education,
 
 642 So.2d 941 (Ala.1994), our supreme court discussed the applicability of the Declaratory Judgment Act in a situation similar to the one presently before this court. In
 
 Stamps,
 
 a group of special-education teachers alleged that they were regularly required, as part of their jobs, to perform procedures that the Nursing Practices Act, §§ 34-21-1 to -63, Ala.Code 1975 (“the NPA”), restricts to licensed nurses, including, among other things, inserting tubes, suctioning tracheotomy tubes, administering prescribed medications, and changing colostomy bags. They filed an action against their employer, the Jefferson County Board of Education (“the Board”), seeking a judgment declaring that performing that work constituted the unauthorized practice of nursing in violation of the NPA and subjected them to potential criminal liability. The trial court entered a judgment in favor of the Board, holding that the work of which the employees complained did not violate the NPA.
 

 On appeal, our supreme court noted that the NPA created a board of nursing that was charged with conducting investigations of possible violations of the NPA and causing the prosecution of persons violat
 
 *820
 
 ing the NPA. Because the employees did not join the board of nursing to their action, the supreme court held that the employees’ action presented a controversy that was not justiciable. After addressing the parties’ contentions, the court reasoned:
 

 “In our view, however, neither side has articulated
 
 precisely
 
 the issue that we perceive to be dispositive. That issue is whether an action brought by special education teachers against their employers seeking a judgment construing the NPA and declaring that their duties subject them to prosecution by the board of nursing for the unlicensed practice of nursing presents a controversy that is justiciable under the Declaratory Judgment Act, Ala.Code 1975, §§ 6-6-220 to -232, where the action does not include the board of nursing. We hold that it does not.
 

 “Section 6-6-222 authorizes the courts of this state to ‘declare rights, status, and other legal relations whether or not further relief is or could be claimed.’ The Declaratory Judgment Act does not, however, ‘empower courts to decide moot questions, abstract propositions, or to give
 
 advisory opinions,
 
 however convenient it might be to have these questions decided for the government of future cases.’
 
 Town of Warrior v. Blaylock,
 
 275 Ala. 113, 114, 152 So.2d 661, 662 (1963) (emphasis added);
 
 see also Underwood v. State,
 
 439 So.2d 125, 128 (Ala.1983);
 
 Shadix v. City of Birmingham,
 
 251 Ala. 610, 38 So.2d 851 (1949).
 

 “ ‘Actions or opinions are denominated “advisory,” ’ and, therefore, not justiciable, ‘when there is an insufficient interest in the plaintiff or defendant to justify judicial determination, where the judgment sought would not constitute specific relief to a litigant ... or where, by reason of
 
 inadequacy of parties defendant, the judgment could not be sufficiently conclusive.’
 
 E. B orchard,
 
 Declaratory Judgments
 
 31 (1934) (emphasis added). ‘“Actions for declaratory judgments brought by individuals to test or challenge the propriety of public action often fail on this ground, ... because the ... public officer or other
 
 person selected as a defendant
 
 has ... no special duties in relation to the matters
 
 which would be affected by any eventual judgment.”
 
 ’
 
 Rogers v. Alabama Bd. of Educ.,
 
 392 So.2d 235, 237 (Ala.Civ.App.1980) (emphasis added) (quoting E. Borchard,
 
 Declaratory Judgments
 
 76 (2d ed. 1941)). ‘ “The
 
 absence of adversary
 
 or the
 
 correct
 
 adversary parties is in principle
 
 fatal.
 
 A mere difference of opinion or disagreement or argument on a legal question affords inadequate ground for invoking the judicial power.” ’
 
 Id.
 
 (emphasis added).
 

 “These considerations were, in effect, codified in § 6-6-229, which provides: ‘The court may refuse to enter a declaratory judgment where such judgment, if entered,
 
 would not terminate the uncertainty or controversy
 
 giving rise to the proceeding.’ (Emphasis added.) For the following reasons, we conclude that a judgment in this action would not ‘terminate the uncertainty’ of which the plaintiffs complain.
 

 “Section 6-6-227, in pertinent part, provides: ‘All persons shall be made parties who have, or claim, any interest which would be affected by the declaration, and
 
 no declaration shall prejudice the rights of persons not parties to the proceeding.’
 
 (Emphasis added.) Conspicuously absent from this case of first impression is the board of nursing, the only entity expressly charged with enforcing the NPA and the one from which a prosecution — entirely hypothetical at
 
 *821
 
 this point — would originate. Pursuant to § 6-6-227, that entity would not be bound by a court’s construction in this action of the NPA’s relevant provisions. A ‘judgment’ in this case would, therefore, represent a mere advisory opinion, one that the board of nursing could ignore if it actually began a prosecution based on these identical facts. In other words, if a court were to conclude that the contested duties did not offend the NPA, the board of nursing, not being bound by that construction of the NPA, could still prosecute the plaintiffs for the unlicensed practice of nursing. The circuit court’s declaratory ‘judgment’ entirely fails to ‘terminate the uncertainty1 the plaintiffs seek to resolve, § 6-6-229, and it is quite likely that a court will be required someday to consider the same issues in another action. Indeed, this case exemplifies the interaction of § 6-6-227 and § 6-6-229, the purpose of § 6-6-229, and the rationale of the rule precluding courts from giving advisory opinions.”
 

 Stamps,
 
 642 So.2d at 944-45. Based on the lack of a justiciable controversy, the supreme court dismissed the appeal.
 
 Id.
 
 at 945.
 

 The present appeal presents the same type of issue that was present in
 
 Stamps.
 
 The legislature has conferred on the State Bar’s Board of Commissioners the power “to formulate rules governing the conduct of all persons admitted to practice and to investigate, or cause to be investigated, and to pass upon all complaints that may be made concerning the professional conduct of any person who has been, or may hereafter be, admitted to the practice of the law.” § 34-3^3(a)(3). As to the investigation and prosecution of complaints against attorneys for, among other things, violations of the Rules of Professional Conduct, the legislature has empowered the Board of Commissioners of the State Bar “[t]o appoint one or more committees from the membership of the board, or from the membership of the entire bar, or partly from one and partly from the other, to take evidence in connection with any complaint filed against any attorney and forward the same to the board.” § 34-3-43(a)(5). That subsection further provides:
 

 “The district attorney of the circuit in which such accused attorney resides shall prosecute any such charge or case, interrogate the witnesses, introduce the evidence in support of such charges and, when requested by any member of the board, argue the matter before the board. The board shall administer such discipline, by public or private reprimand, suspension from the practice of law or exclusion and disbarment therefrom, as the case shall, in its judgment, warrant.”
 

 Id.
 
 Thus, as it relates to the present case, the legislature authorized the State Bar to create Rule 1.5, and the legislature has committed to the State Bar the authority to enforce that rule.
 

 As previously noted, a declaratory judgment is binding only on the parties to the action in which the judgment was sought. The State Bar was not made a party to this action. As a result, the trial court’s determination as to whether the fee agreement violates Rule 1.5 is not binding on the State Bar. Thus, the State Bar, which is charged with enforcing Rule 1.5, is free to interpret and enforce Rule 1.5 with regard to the fee agreement at issue in this case without regard to the trial court’s judgment, and without regard to any disposition by this court of the appeal from that judgment. The trial court’s judgment, and any disposition by this court that affirms or reverses that judgment, is, as a result, merely advisory.
 

 
 *822
 
 Because this case presents a dispute that is not justiciable and for which any judgment constitutes merely an advisory opinion, the trial court never obtained subject-matter jurisdiction over the action; its judgment is therefore void.
 
 See Stamps,
 
 642 So.2d at 945. Because a void judgment will not support an appeal, we are left with no choice but to dismiss the appeal and to instruct the trial court to dismiss the action.
 
 Id.
 

 The law firm filed a motion to strike B.W.T.’s principal appellate brief or, in the alternative, to strike those sections of that brief that, it argues, “pertain to new arguments and/or references to exhibits which were not before the trial court.” Because we determine that this court lacks appellate jurisdiction over this matter because the trial court never obtained subject-matter jurisdiction over the law firm’s action, the law firm’s motion to strike is denied as moot.
 

 APPEAL DISMISSED WITH INSTRUCTIONS.
 

 PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 MOORE, J., dissents, without writing.
 

 [1]
 

 . As discussed herein, the dispute in this action arises from a fee agreement between the parties regarding an action in which the law firm represented B.W.T. That action terminated with a settlement agreement that included a confidentiality agreement. Because of that confidentiality agreement, the pleadings and other papers filed in this case have been placed under seal, both in the trial court and in this court. We are using the initials of the appellant, rather than his name, in an effort to honor the confidentiality agreement.
 

 [2]
 

 . Rule 1.5 provides that “[a] lawyer shall not enter into an agreement for, or charge, or collect a clearly excessive fee.”