WISE, Justice.
The University of South Alabama Medical Center and the University of South Alabama Children’s and Women’s Hospital (“the University hospitals”) appeal from a summary judgment entered by the Mobile Circuit Court following Mobile County’s filing of a complaint seeking a judgment interpreting Act No. 83-501, Ala. Acts 1983 (“the Act”). We dismiss the appeal.

Act No. 83-501

The Act, which became effective July 14, 1983, provides, in relevant part, as follows:
“Section 2. At the determination of the County Commission, there may be hereby established the MOBILE COUNTY INDIGENT CARE BOARD, *737 hereinafter referred to as ‘the Board’, whose composition and duties shall be as follows:
“(a) The County Commission may appoint a Mobile County Indigent Care Board which shall consist of three members who are duly qualified electors of Mobile County, but no member of such Board shall be employed by any hospital. Of the members of the Board first appointed under the provisions of this section, one shall be appointed for a term of one year, one shall be appointed for a term of three years, and one shall be appointed for a term of five years. Thereafter, their successors shall be appointed for terms of five years and may be appointed to succeed themselves as members of the Board. The County Commission shall appoint all members to the Board. In the event the County Commission does not appoint the subject Board, the duties and responsibilities of the Board herein shall be carried out by the County Commission. Members of the Board shall serve without compensation.
“(b) The Board shall meet monthly at a public place within Mobile County to certify accounts presented to the Board by providers of medical care who are providing medical care to medically indigent citizens of Mobile County and to make recommendations for payments from the Board’s account or accounts to such providers of medical care by the County Commission. The Board shall be empowered to employ appropriate personnel, for the purpose of maintaining the Board’s records and account or accounts or the County Commission may provide such personnel for the purpose of maintaining the Board’s records and account or accounts and shall be empowered to expend revenues in its account or accounts to carry out the several provisions of this Act. The Board may contract with the State Department of Pensions and Security for the purposes of evaluating and certifying persons as being medically indigent according to guidelines established by the Board. The Board shall recommend to the County Commission at each regular meeting of the County Commission reimbursement to be paid to providers of medical care to the medically indigent of Mobile County at an amount equal to the reasonable cost of said services rendered by the provider. It shall be the responsibility of the providers of medical care to verify and furnish appropriate materials for the Board to certify the accounts presented. PROVIDED, however, notwithstanding any part herein to the contrary, providers of medical care shall be reimbursed only for that part of unreimbursed care which exceeds 6 percent of that provider’s gross billings for the current fiscal year. Unreimbursed care shall not include amounts for contractual adjustments, discounts or amounts required to be provided under Hill-Burton[1] or other funds supporting indigent care from any other sources. A hospital shall be reimbursed for providing hospital care to a medically indigent person at a rate equal to the average of Mobile County, Alabama hospital’s Medicare costs determined by the annual Medicare cost reports of said hospitals. Reimbursements by the Board shall not include any payment for physician services. The Board shall require a copy of a certified audit without qualifi *738 cation of any provider and, if applicable, its parent organization, applying for reimbursement by the Board and the cost of such audit shall be the burden of said provider. During the first fiscal year in which this Act becomes effective, specifically October 1,1982 through September 30,1983, the reasonable costs of services to the medically indigent, which services are rendered during that fiscal year, shall be eligible for reimbursement to the provider pursuant to this Act.
“Section 4. The County Commission shall establish an account or accounts within the general fund of the County for payment of such amounts recommended by the Mobile County Indigent Care Board, as set forth herein. The County Commission will place into such account or accounts an amount equal to the sum of one-half (50%) of all oil and gas severance tax revenues, designated for and distributed to the General Fund of Mobile County, and remaining after distribution of those revenues to the Mobile County Board of Health and the Mobile County Board of Education provided for by Act 870, Regular Session 1975 (Acts 1975, p. 1714), pursuant to Title 40, Chapter 20, Article 1, Code of Alabama 1975, as amended, not to include any and all net revenues held in escrow, as a result of litigation, for Mobile County which have been collected pursuant to Act No. 79-434, H. 148,1979 Regular Session and Act No. 80-708, H. 909,1980 Regular Session.
“Allocation of such revenues for indigent care shall not exceed $5,000,000.00 in fiscal year 1982-1983. In subsequent years the Board shall consider such factors as estimated population growth, unemployment rates, population age distribution and other such demographic and sociological factors as might be indicative of indigent care needs in establishing the levels of indigent care funding, provided, however, that the funds so allocated shall not be less than the funds allocated for the previous year as adjusted by change in the hospital consumer price index.
“The remainder of all revenues paid to Mobile County pursuant to any other severance tax or privilege tax on oil and gas, under any general or local law whatsoever, shall not be deemed a part of or included in the provision of this Act. Said revenues shall be used by the Mobile County Indigent Care Board to provide for the costs of medical care and treatment of medically indigent citizens of Mobile County, as set forth herein. PROVIDED, however, that if the subject revenues exceed the need for funds to reimburse for medical care for the medically indigent of Mobile County, as of the end of the fiscal year of the County Commission, then such funds will revert to the General Fund of Mobile County.
“Section 5. The County Commission also shall obligate such additional revenues from the General Fund of Mobile County in the amount of any oil and gas severance tax revenues being held in escrow designated for Mobile County and collected pursuant to Act No. 79-434, H. 148, 1979 Regular Session (Acts 1979, p. 687) and Act No. 80-708, H. 909, 1980 Regular Sessions (Acts 1980, p. 1438), and in the amount of any funds transferred from the License Commissioner of Mobile County to the General Fund of Mobile County which relates to beer taxes; such revenues to be used to the extent the Board may require same to perform properly its duties as provided in Section 2 of this Act after such funds authorized in Section 4 have been appropriated and paid out by the Board. Provided, however, that in the event *739 that oil and gas severance tax revenues held in escrow and collected pursuant to Act No. 79-434, H. 148, 1979 Regular Session (Acts 1979, p. 687) and Act. No. 80-708, H. 909, 1980 Regular Session (Acts 1980, p. 1438) and distributed to the General Fund of Mobile County are reduced by judicial decree, the County Commission shall obligate funds from its General Fund in an amount equal to one-half (50%) of such reduction, not to exceed $750,000.00 per annum for the 1982-83 and 1983-84 fiscal years of the County Commission to the extent the Board may require same to perform properly its duties as provided in Section 2 of this act after such funds authorized in Section 4 have been appropriated and paid out by the Board.”
(Capitalization in original.)

Procedural History

In 2009, Mobile County filed a complaint asserting that the Act is indefinite and unclear as to which hospitals qualify for reimbursements under the Act and the amount of those reimbursements and seeking a judgment declaring the qualifications for reimbursements and the method of computing those reimbursements. The following were named as defendants: Infirmary Health Hospitals, Inc., d/b/a Infirmary West and Infirmary Long Term Acute Care Hospital (“IHH”); Mobile Infirmary Association, d/b/a Mobile Infirmary Medical Center (“Mobile Infirmary”); Providence Hospital (“Providence”); Springhill Hospitals, Inc., d/b/a Springhill Memorial Hospital;[2] and the University hospitals. In the complaint, Mobile County alleged:
“1. [Mobile County] brings this action and invokes the jurisdiction of this Court pursuant to the provisions of § 6-6-220 et seq., Code of Alabama, 1975.
“2. [Mobile County] is a body corporate and politic, and a political subdivision of the State of Alabama.
“3. Act No. 83-501 of the Alabama Legislature (the Act) makes provision for reimbursement of the cost of medical care provided to indigent residents of Mobile County, Alabama by hospitals qualifying for reimbursement thereunder, to be paid from a portion of [Mobile County’s] oil and gas severance tax revenues.
“4. Defendants are hospitals or do business as hospitals licensed by the Alabama Department of Public Health, which provide medical care to indigent residents of Mobile County, Alabama and which qualify or may qualify in the future for reimbursement of the cost of such care pursuant to the Act.
“5. The provisions of the Act are indefinite and unclear to the extent that [Mobile County] is unable to determine which hospitals qualify for reimbursement thereunder, or the amount of reimbursement to which they are entitled.
“6. As a consequence thereof, [Mobile County] is unable to distribute oil and gas severance tax revenues now on hand totaling $5,565,000.00, which revenues will continue to accrue during the pendency of this action.
“7. There exists an actual controversy between [Mobile County] and Defendants as to the determination of the qualification of providers of indigent care for reimbursement, now or in the future, of the cost of the same; and as to the computation of the amount of reimbursement, if any, to which they are or *740 may in the future be entitled, respectively, under the Act.
“WHEREFORE, [Mobile County] prays that this Court will
“(a) Cause this matter to be expedited in order that reimbursement may be made to qualified providers of indigent care to residents of Mobile County as expeditiously as possible;
“(b) Appoint a special master, should the Court deem it necessary, possessing the specialized skill and knowledge needed to determine the proper interpretation and meaning of the Act;
“(c) Order that the special master be compensated from oil and gas severance tax revenues now on hand, as provided by the Act;
“[ (d) ] Enter a declaratory judgment or decree determining the proper interpretation and meaning of the Act....”
The University hospitals filed an answer to the complaint, asserting that the Act is not indefinite and unclear and further asserting that Mobile County had previously provided reimbursement under the Act to hospitals providing indigent care and that it could continue to do so “based on established procedures and precedence and the plain meaning of the Act.” IHH and Mobile Infirmary filed an answer to the complaint, and Providence separately answered the complaint. In their answers, IHH, Mobile Infirmary, and Providence admitted some of the allegations in the complaint, including the allegation that there were questions about how Mobile County should interpret the Act. They also filed counterclaims against Mobile County and various cross-claims against the remaining defendant hospitals, advocating for their interpretations of the Act.
Subsequently, IHH and Mobile Infirmary filed a motion for a summary judgment, which Providence joined in part, and a supporting brief as to all claims, counterclaims, and cross-claims, asking the trial court to construe the Act in accordance with the interpretations advocated by them and by Providence. The University hospitals filed a response in opposition to IHH and Mobile Infirmary’s motion for a summary judgment. After conducting a hearing on the motion for a summary judgment, the trial court entered a summary judgment. In its extensive order, it interpreted the Act in favor of the interpretations advocated by IHH, Mobile Infirmary, and Providence. Mobile County and the University hospitals filed separate motions to alter or amend the final summary-judgment order. The trial court summarily denied the motions, and the University hospitals appealed.

The Appeal

In its brief to this Court, Providence argues that the University hospitals may not have standing to pursue this appeal because, Providence reasons, the only party as to which the trial court’s judgment is adverse and thus the only party with standing to appeal is Mobile County, and Mobile County did not appeal. In response, the University hospitals concede in their reply brief that, “[i]f the University Hospitals [do] not have standing because of [Mobile] County’s intention to not oppose the motions for summary judgment (and not appeal) then there is a legitimate question whether the County filed this Complaint for Declaratory Judgment solely for the purposes of obtaining an advisory opinion, and not because there was an actual controversy between any of the parties.” (Reply brief, at pp. 3-4.)
“It is the duty of an appellate court to consider lack of jurisdiction. Ex parte Smith, 438 So.2d 766, 768 (Ala.1983).
“ ‘ “ ‘[J]usticiability is jurisdictional,’ Ex parte State ex rel. James, 711 So.2d 952, 960 n. 2 (Ala.1998); hence, *741 if necessary, ‘this Court is duty bound to notice ex mero motu the absence of subject matter jurisdiction.’” Baldwin County [v. Bay Minette], 854 So.2d [42] at 45 [(Ala.2003)] (quoting Stamps [v. Jefferson County Bd. of Educ.], 642 So.2d [941] at 945 n. 2 [(Ala.1994)]). If we determine that a complaint fails to state a justiciable claim, we are obliged to conclude that the trial court lacked jurisdiction over that complaint; such a complaint therefore would not require the filing of a responsive pleading.’
“Bedsole v. Goodloe, 912 So.2d 508, 518 (Ala.2005).
“The Declaratory Judgment Act, § 6-6-220 et seq., Ala.Code 1975, is not a vehicle for obtaining legal advice from the courts:
“ ‘The Declaratory Judgment Act, codified at §§ 6-6-220 through -232, Ala.Code 1975, “does not ‘ “empower courts to decide ... abstract propositions, or to give advisory opinions, however convenient it might be to have these questions decided for the government of future cases.” ’ ” Bruner v. Geneva County Forestry Dep't, 865 So.2d 1167, 1175 (Ala.2003) (quoting Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 944 (Ala.1994), quoting in turn Town of Warrior v. Blaylock, 275 Ala. 113, 114, 152 So.2d 661, 662 (1963)) (emphasis added in Stamps)....’
“Bedsole, 912 So.2d at 518.”
Etowah Baptist Ass’n v. Entrekin, 45 So.3d 1266, 1274 (Ala.2010). See also Ex parte Bridges, 925 So.2d 189, 192 (Ala.2005).
In its complaint seeking a declaratory judgment, Mobile County made bare assertions that the provisions of the Act are so indefinite and unclear that it cannot determine which hospitals qualify for reimbursement under the Act and the amount of reimbursement to which the qualifying hospitals are entitled and that there was an “actual controversy” between it and the defendant hospitals. However, at the time Mobile County filed the declaratory-judgment complaint, the Act had been in effect for approximately 25 years, and Mobile County had been implementing the provisions of the Act during the majority of that time. In its complaint, Mobile County did not indicate why, after 25 years, it was not able to determine how and to whom to now distribute the designated oil and gas severance-tax revenues. It did not indicate which portions of the Act were indefinite and unclear, and it did not specifically set forth how its interpretation of the Act was adverse to any interpretation advanced by any of the defendant hospitals. Instead, Mobile County asked the court generally “to determine the proper interpretation and meaning of the Act.”
 On its face, Mobile County’s declaratory-judgment complaint does not allege any actual controversy between parties whose legal interests are adverse. Rather, it simply reflects Mobile County’s own uncertainty concerning the proper interpretation of the Act. See Gulf Beach Hotel, Inc. v. State ex rel. Whetstone, 935 So.2d 1177 (Ala.2006). It is clear that Mobile County filed this action seeking to get clarification, or an advisory opinion, as to how it should implement the Act in the future. See Baldwin Cnty. v. Bay Minette, 854 So.2d 42, 47 (Ala.2003) (“Indeed, the County concedes that it began this action ‘in an effort to get some clarification regarding the competing authorities in the area.’ ... Thus, by its own admission, the County is seeking an ‘advisory opinion’ from this Court.”). However, as this Court noted in Gulf Beach Hotel, 935 So.2d at 1183, “[w]hile it might be convenient for this Court to address the issues *742 raised by [Mobile County], this Court is not empowered by the Declaratory Judgment Act to give advisory opinions, and it will not do so.”
“There must be a bona fide existing controversy of a justiciable character to confer upon the court jurisdiction to grant declaratory relief under the declaratory judgment statutes, and if there was no justiciable controversy existing when the suit was commenced the trial court had no jurisdiction. City of Mobile v. Scott, 278 Ala. 388, 178 So.2d 545 [(1965)]; City of Mobile v. Jax Distributing Co., 267 Ala. 289, 101 So.2d 295 [(1958)].”
State ex rel. Baxley v. Johnson, 293 Ala. 69, 73, 300 So.2d 106, 110 (1974) (emphasis added). Because there was no justiciable controversy and Mobile County sought only an advisory opinion in its declaratory-judgment complaint, the trial court did not have subject-matter jurisdiction over this action. See Ingram v. Van Dall, 70 So.3d 1191 (Ala.2011). “ ‘A judgment entered by a court lacking subject-matter jurisdiction is absolutely void and will not support an appeal; an appellate court must dismiss an attempted appeal from such a void judgment.’ Vann v. Cook, 989 So.2d 556, 559 (Ala.Civ.App.2008).” MPQ, Inc. v. Birmingham Realty Co., 78 So.3d 391, 394 (Ala.2011). Accordingly, we dismiss this appeal with the instructions that the trial court vacate its judgment and dismiss the case, without prejudice.
APPEAL DISMISSED WITH INSTRUCTIONS.
WOODALL, STUART, BOLIN, PARKER, MURDOCK, SHAW, and MAIN, JJ., concur.

. "Hill-Burton” refers to The Hospital Survey and Construction Act of 1944, 42 U.S.C. § 291. The Hill-Burton Act provided construction assistance to public and nonprofit hospitals from its enactment through 1982. In return for the financial assistance, the hospitals were required to provide services for those unable to pay.

. Springhill Hospitals, Inc., did not answer the complaint or otherwise participate in this litigation. The trial court interpreted its failure to respond as an indication that it did not intend to seek reimbursement under the Act.