**rel: 06/20/2014**

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2013-2014

_____

### 1130301

_____

**Mary Hall, personal representative of the Estate of Adolphus Hall, Sr., and Anaya McKinnon, personal representative of the Estate of Wanzy Lee Bowman**

**v.**

**Environmental Litigation Group, P.C.**

**Appeal from Jefferson Circuit Court**
**(CV-13-901014)**

BRYAN, Justice.

Mary Hall, the personal representative of the estate of Adolphus Hall, Sr., and Anaya McKinnon, the personal representative of the estate of Wanzy Lee Bowman (hereinafter

collectively referred to as "the plaintiffs"), appeal from the Jefferson Circuit Court's order dismissing their complaint filed against Environmental Litigation Group, P.C., a law firm ("ELG"). For the reasons set forth herein, we reverse and remand.

<u>Facts and Procedural History</u>

On March 19, 2013, the plaintiffs filed a complaint in the Jefferson Circuit Court against ELG, requesting a declaratory judgment and alleging one count of unjust enrichment and one count of breach of contract. The plaintiffs asserted those claims on behalf of the estates they represented and on behalf of "others similarly situated as a class action pursuant to Rule 23," Ala. R. Civ. P. The plaintiffs' complaint included the following factual allegations: in the 1990s, ELG agreed to represent hundreds of clients who had been exposed to asbestos, including Adolphus Hall and Bowman; ELG entered into an attorney-employment agreement with each client; pursuant to that agreement, ELG agreed to "take all legal steps necessary to enforce the said tort claim," and in return ELG would receive 40% of amounts collected from any settlement or judgment as its fee; the

agreement also permitted ELG to reimburse itself for reasonable expenses related to the clients' claims; on February 23, 2012, ELG sent a memorandum to all of its "asbestos clients" stating that, as a result of additional work required to obtain the proceeds of a settlement that ELG had negotiated, ELG would begin charging an "administrative-service-expense charge" in the amount of $250 for living clients and $600 for clients who were deceased, which could be deducted from settlement proceeds due to be passed on to the client; between April 2011 and July 2012, the estate of Adolphus Hall received settlement proceeds from three asbestos defendants and, from those proceeds, ELG deducted $192.01 in expenses and a $600 administrative-service-expense charge, in addition to deducting 40% of the settlement proceeds as an attorney fee; and, in December 2012, the estate of Wanzy Lee Bowman received settlement proceeds from one asbestos defendant and ELG deducted $68.64 as an "administrative credit" in addition to deducting 40% of the proceeds as an attorney fee. The plaintiffs alleged that the administrative-service-expense charge "is nothing more than an extra attorney fee collected by ELG in addition to the 40% contingent fee"

provided as the attorney fee in the attorney-employment agreement.

The plaintiffs asked the circuit court to enter an order declaring that ELG had breached the attorney-employment agreement "by charging, without legal authority, more than 40% for attorney staff services"; that ELG had been unjustly enriched by its wrongful activities; that the plaintiffs were due monetary relief; and that the plaintiffs were entitled to recover an attorney fee and reasonable expenses related to the prosecution of this action. In addition, the plaintiffs alleged separate counts of unjust enrichment and breach of contract, which were based on ELG's alleged breach of the attorney-employment agreement.

In response to the plaintiffs' complaint, ELG moved the circuit court to dismiss the complaint pursuant to Rule 12(b)(6), Ala. R. Civ. P., for failure to state a claim upon which relief could be granted.[1] ELG attached several

---

[1]ELG also requested that the circuit court seal the record and enter a protective order in favor of ELG so that it would not be required to respond to the plaintiffs' discovery requests, in order to protect the attorney-client privilege of ELG's clients that were not parties to the proceeding. On June 3, 2013, the circuit court entered an order granting ELG's motion for a protective order and its motion to seal the record.

documents to its motion to dismiss, including the attorney-employment agreement signed by Adolphus Hall and Mary Hall, the attorney-employment agreement signed by Bowman, and an "adoption and ratification" of Bowman's attorney-employment agreement signed by McKinnon. ELG also attached the memorandum dated February 23, 2012, from ELG to its asbestos clients informing them of the implementation of the administrative-service-expense charge.

ELG subsequently filed a supplement to its motion to dismiss, arguing that the plaintiffs had, "in essence, ... asserted that ELG has charged its clients an excessive fee and [they] ask this court to enter a declaratory judgment to that effect." ELG further argued, among other things, that Rule 1.5, Ala. R. Prof. Cond., directly addresses the issue of excessive attorney fees;[2] that the Alabama State Bar was not a party to the action; and that a declaratory judgment in the present case would constitute only an advisory opinion by the circuit court because, it argued, the Alabama State Bar has sole authority to enforce the Alabama Rules of Professional

---

[2]Rule 1.5(a), Ala. R. Prof. Cond., provides, in pertinent part: "A lawyer shall not enter into an agreement for, or charge, or collect a clearly excessive fee."

5

1130301

Conduct and to determine whether an attorney fee is excessive under Rule 1.5. Thus, ELG argued, the circuit court was required to dismiss the plaintiffs' complaint for lack of subject-matter jurisdiction. See Rule 12(b)(1), Ala. R. Civ. P. (providing that "lack of jurisdiction over the subject matter" is a defense that may be made by motion). ELG cited B.W.T. v. Haynes & Haynes, P.C., 20 So. 3d 815, 822 (Ala. Civ. App. 2009), to support its position. The plaintiffs filed a response to ELG's motion to dismiss, arguing, among other things, that their complaint was not "based merely on an ethics charge of 'excessive fees'" but was based on an allegation that "ELG ha[d] breached the terms of the [attorney-employment agreement,] which ELG drafted and entered into with each client."

On June 19, 2013, the circuit court entered an order denying ELG's motion to dismiss and ordered "review by the Alabama State Bar as it relates to Rule 1.5 of the Alabama Rules of Professional Conduct." The circuit court stayed the proceedings "until ruling from the Alabama State Bar."

On September 4, 2013, the plaintiffs filed a motion to reconsider the circuit court's June 19 order. The plaintiffs

6

alleged that, in the time that had passed since the entry of that order, the Alabama State Bar had not responded to the circuit court's order. The plaintiffs also reiterated that their complaint was based on a breach of contract by ELG, not a purported violation of the Alabama Rules of Professional Conduct by ELG. In response, ELG filed another motion to dismiss the plaintiffs' complaint because, it alleged, the circuit court was without subject-matter jurisdiction. ELG argued that the Disciplinary Commission and the Disciplinary Board of the Alabama State Bar have exclusive disciplinary jurisdiction over attorneys admitted to practice law in Alabama and that "the only claim made by the plaintiffs -- that ELG is engaging in professional misconduct by charging excessive fees -- falls outside the [circuit] court's jurisdiction."

On November 20, 2013, the circuit entered an order denying the plaintiffs' motion to reconsider its June 19 order and dismissing the case with prejudice. The plaintiffs timely filed a notice of appeal. On appeal, the plaintiffs argue that the circuit court erred in dismissing their complaint because, they say, the allegations in their complaint

7

1130301

articulated a breach-of-contract claim against ELG and because their complaint was not an ethics complaint against ELG, which, they contend, would have been subject to the exclusive jurisdiction of the Alabama State Bar. In response, ELG asserts that the circuit court properly dismissed the plaintiffs' complaint because, ELG says, the circuit court did not have subject-matter jurisdiction over the plaintiffs' complaint.

## Discussion

In Newman v. Savas, 878 So. 2d 1147 (Ala. 2003), this Court set forth the standard of review of a ruling on a motion to dismiss for lack of subject-matter jurisdiction:

> "A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993). This Court must accept the allegations of the complaint as true. Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So. 2d 285, 288 (Ala. 2002). Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail. Nance, 622 So. 2d at 299."

878 So. 2d at 1148-49.

ELG argued below, and maintains on appeal, that the Court of Civil Appeals' decision in B.W.T. v. Haynes & Haynes, P.C., supra, required the dismissal of the plaintiffs' complaint for

8

1130301

lack of subject-matter jurisdiction. The plaintiffs argued below, and they maintain on appeal, that B.W.T. is distinguishable from the present case.

In B.W.T., B.W.T., the client and an attorney, entered into a fee agreement with Haynes & Haynes, P.C. ("the law firm"), which had agreed to represent B.W.T. in an employment-discrimination case. Pursuant to the fee agreement, the law firm was entitled to 45% of all amounts recovered as a result of a judgment or settlement in favor of B.W.T., plus expenses incurred by the law firm. In addition, the law firm was entitled to 100% of any attorney-fee award assessed against the adverse party. In the employment-discrimination action, the jury returned a verdict in favor of B.W.T., and B.W.T. was awarded attorney fees in the trial court and on appeal; the total award to be divided between B.W.T. and the law firm was $437,920. When the law firm proposed to give B.W.T. only $127,034.82 as his portion of the recovery, B.W.T. objected and sent the law firm several opinions from other jurisdictions holding that an attorney is not entitled to recover a contingency fee in addition to court-ordered attorney fees provided by statute.

9

The law firm subsequently filed a complaint in the Jefferson Circuit Court requesting a judgment declaring that the fee agreement between the law firm and B.W.T. was valid and enforceable. In his answer, B.W.T. alleged that the issue in the case was whether the law firm's retention of $310,885.18 constituted a double recovery and was, therefore, a violation of Rule 1.5, Ala. R. Prof. Cond., which provides: "A lawyer shall not enter into an agreement for, or charge, or collect a clearly excessive fee." B.W.T. further alleged that only the Alabama State Bar had jurisdiction to determine whether the law firm had violated Rule 1.5. The law firm moved for a summary judgment, arguing that the fee agreement was valid and enforceable and that the proposed distribution of the award was consistent with the fee agreement and did not violate Rule 1.5. According to the Court of Civil Appeals, the law firm recognized "that the crux of the matter did not actually relate to the existence of a contract but, rather, to the question whether the fee agreement violated Rule 1.5." 20 So. 3d at 818. Thus, the law firm argued that "the fee it charged B.W.T. for its work on his behalf was reasonable under the circumstances presented by B.W.T.'s case and, as a result,

did not violate Rule 1.5." Id. B.W.T. maintained that the action should be dismissed but argued, in the alternative, that the circuit court should enter a judgment in his favor because "'any contingent fee contract that awards [to] an attorney fees and expenses of nearly 71% of the total recovery is unfair, excessive, and unconscionable under the Rules of Professional Conduct.'" Id. The circuit court granted the law firm's motion and entered a summary judgment in its favor. Because the law firm had sought a judgment declaring whether the fee agreement violated Rule 1.5 and because B.W.T. had argued that issue extensively in his response, the Court of Civil Appeals "interpret[ed] the [circuit] court's judgment as holding that the fee agreement [did] not violate Rule 1.5, Ala. R. Prof. Cond." 20 So. 3d at 819.

In concluding that the appeal was due to be dismissed as having been taken from a void judgment, the Court of Civil Appeals stated:

"The legislature has conferred on the [Alabama] State Bar's Board of Commissioners the power 'to formulate rules governing the conduct of all persons admitted to practice and to investigate, or cause to be investigated, and to pass upon all complaints that may be made concerning the professional conduct of any person who has been, or may hereafter be, admitted to the practice of the law.' §

11

34-3-43(a)(3)[, Ala. Code 1975]. As to the investigation and prosecution of complaints against attorneys for, among other things, violations of the Rules of Professional Conduct, the legislature has empowered the Board of Commissioners of the [Alabama] State Bar '[t]o appoint one or more committees from the membership of the board, or from the membership of the entire bar, or partly from one and partly from the other, to take evidence in connection with any complaint filed against any attorney and forward the same to the board.' § 34-3-43(a)(5). That subsection further provides:

> "'The district attorney of the circuit in which such accused attorney resides shall prosecute any such charge or case, interrogate the witnesses, introduce the evidence in support of such charges and, when requested by any member of the board, argue the matter before the board. The board shall administer such discipline, by public or private reprimand, suspension from the practice of law or exclusion and disbarment therefrom, as the case shall, in its judgment, warrant.'

"Id. Thus, as it relates to the present case, the legislature authorized the State Bar to create Rule 1.5, and the legislature has committed to the State Bar the authority to enforce that rule.

"... [A] declaratory judgment is binding only on the parties to the action in which the judgment was sought. The State Bar was not made a party to this action. As a result, the trial court's determination as to whether the fee agreement violates Rule 1.5 is not binding on the State Bar. Thus, the State Bar, which is charged with enforcing Rule 1.5, is free to interpret and enforce Rule 1.5 with regard to the fee agreement at issue in this case without regard to the trial court's judgment, and without regard to any disposition by this court of the appeal from

12

that judgment. The trial court's judgment, and any disposition by this court that affirms or reverses that judgment, is, as a result, merely advisory.

"Because this case presents a dispute that is not justiciable and for which any judgment constitutes merely an advisory opinion, the trial court never obtained subject-matter jurisdiction over the action; its judgment is therefore void. See Stamps [v. Jefferson Cnty. Bd. of Educ.], 642 So. 2d [941,] 945 [(Ala. 1994)]. Because a void judgment will not support an appeal, we are left with no choice but to dismiss the appeal and to instruct the trial court to dismiss the action. Id."

20 So. 3d at 821-22.

In the present case, unlike B.W.T., the "crux" of the plaintiffs' case is not whether ELG's fee arrangement with the plaintiffs violated Rule 1.5, Ala. R. Prof. Cond. Although ELG attempted to make that issue the crux of the plaintiffs' case, the plaintiffs did not ask the circuit court to determine whether ELG had violated Rule 1.5, and a determination of whether ELG violated Rule 1.5 is not necessary to the resolution of the plaintiffs' claims.[3] Thus, unlike B.W.T., the circuit court in this case has not been asked to determine only whether ELG has violated the Alabama Rules of Professional Conduct. The "crux" of the plaintiffs'

_____

[3]We note that ELG, in its initial motion to dismiss, stated: "The plaintiffs make allegations which essentially assert a simple breach of contract."

13

claims is that ELG breached the attorney-employment agreement by allegedly taking as an attorney fee more than 40% of the settlement proceeds. Thus, unlike B.W.T., there is no reason that the Alabama State Bar should have been a party to this action, nor would a judgment on the claims presented by the plaintiffs constitute merely an "advisory opinion" to the Alabama State Bar. Thus, we conclude that B.W.T. is distinguishable from the present case and does not require dismissal of the plaintiffs' action for lack of subject-matter jurisdiction.

The claims brought by the plaintiffs fall within the subject-matter jurisdiction of the circuit court. Accordingly, the circuit court's judgment dismissing the plaintiffs' complaint with prejudice is reversed, and the cause is remanded for further proceedings.

ELG filed a motion to dismiss the plaintiffs' appeal, arguing that this Court does not have subject-matter jurisdiction over the plaintiffs' appeal because "[o]nly the Alabama State Bar has jurisdiction to resolve the dispute between the parties." In light of our conclusion in this case, we deny ELG's motion to dismiss.

1130301

MOTION TO DISMISS DENIED; REVERSED AND REMANDED.

Moore, C.J., and Bolin, Murdock, and Main, JJ., concur.