SHAW, Justice.
Mary Hall, as personal representative of the estate of Adolphus Hall, Sr.,[1] and Anaya McKinnon, as personal representative of the estate of Wanzy Lee Bowman (hereinafter collectively referred to as "the plaintiffs"), appeal from the Jefferson Circuit Court's dismissal of their class-action claims against Environmental Litigation Group, P.C. ("ELG"). We reverse and remand.
Facts and Procedural History
This is the second time this matter has come before the Court. Our previous decision, Hall v. Environmental Litigation Group, P.C., 157 So.3d 876, 878 (Ala. 2014) (" Hall I"), discusses the pertinent factual and procedural history:
"On March 19, 2013, the plaintiffs filed a complaint in the Jefferson Circuit Court against ELG, requesting a declaratory judgment and alleging one count of unjust enrichment and one count of breach of contract. The plaintiffs asserted those claims on behalf of the estates they represented and on behalf of 'others similarly situated as a class action pursuant to Rule 23,' Ala. R. Civ. P. The plaintiffs' complaint included the following factual allegations: in the 1990s, ELG agreed to represent hundreds of clients who had been exposed to asbestos, including Adolphus Hall and Bowman; ELG entered into an attorney-employment agreement with each client; pursuant to that agreement, ELG agreed to 'take all legal steps necessary to enforce the said tort claim,' and in return ELG would receive 40% of amounts collected from any settlement or judgment as its fee; the agreement also permitted ELG to reimburse itself for reasonable expenses related to the clients' claims; on February 23, 2012, ELG sent a memorandum to all of its 'asbestos clients' stating that, as a result of additional work required to obtain the proceeds of a settlement that ELG had negotiated, ELG would begin charging an 'administrative-service-expense charge' in the amount of $250 for living clients and $600 for clients who were deceased, which could be deducted from settlement proceeds due to be passed on to the client; between April 2011 and July 2012, the estate of Adolphus Hall received settlement proceeds from three asbestos defendants and, from those proceeds, ELG deducted $192.01 in expenses and a $600 administrative-service-expense charge, in addition to deducting 40% of the settlement proceeds as an attorney fee; and, in December 2012, the estate of Wanzy Lee Bowman *952 received settlement proceeds from one asbestos defendant and ELG deducted $68.64 as an 'administrative credit' in addition to deducting 40% of the proceeds as an attorney fee. The plaintiffs alleged that the administrative-service-expense charge 'is nothing more than an extra attorney fee collected by ELG in addition to the 40% contingent fee' provided as the attorney fee in the attorney-employment agreement.
"The plaintiffs asked the circuit court to enter an order declaring that ELG had breached the attorney-employment agreement 'by charging, without legal authority, more than 40% for attorney staff services'; that ELG had been unjustly enriched by its wrongful activities; that the plaintiffs were due monetary relief; and that the plaintiffs were entitled to recover an attorney fee and reasonable expenses related to the prosecution of this action. In addition, the plaintiffs alleged separate counts of unjust enrichment and breach of contract, which were based on ELG's alleged breach of the attorney-employment agreement.
"In response to the plaintiffs' complaint, ELG moved the circuit court to dismiss the complaint pursuant to Rule 12(b)(6), Ala. R. Civ. P., for failure to state a claim upon which relief could be granted. ELG attached several documents to its motion to dismiss, including the attorney-employment agreement signed by Adolphus Hall and Mary Hall, the attorney-employment agreement signed by Bowman, and an 'adoption and ratification' of Bowman's attorney-employment agreement signed by McKinnon. ELG also attached the memorandum dated February 23, 2012, from ELG to its asbestos clients informing them of the implementation of the administrative-service-expense charge.
"ELG subsequently filed a supplement to its motion to dismiss, arguing that the plaintiffs had, 'in essence, ... asserted that ELG has charged its clients an excessive fee and [they] ask this court to enter a declaratory judgment to that effect.' ELG further argued, among other things, that Rule 1.5, Ala. R. Prof. Cond., directly addresses the issue of excessive attorney fees; that the Alabama State Bar was not a party to the action; and that a declaratory judgment in the present case would constitute only an advisory opinion by the circuit court because, it argued, the Alabama State Bar has sole authority to enforce the Alabama Rules of Professional Conduct and to determine whether an attorney fee is excessive under Rule 1.5. Thus, ELG argued, the circuit court was required to dismiss the plaintiffs' complaint for lack of subject-matter jurisdiction. See Rule 12(b)(1), Ala. R. Civ. P. (providing that 'lack of jurisdiction over the subject matter' is a defense that may be made by motion). ELG cited B.W.T. v. Haynes & Haynes, P.C., 20 So.3d 815, 822 (Ala. Civ. App. 2009), to support its position. The plaintiffs filed a response to ELG's motion to dismiss, arguing, among other things, that their complaint was not 'based merely on an ethics charge of "excessive fees" ' but was based on an allegation that 'ELG ha[d] breached the terms of the [attorney-employment agreement,] which ELG drafted and entered into with each client.'
"....
"On November 20, 2013, the circuit [court] entered an order ... dismissing the case with prejudice. The plaintiffs timely filed a notice of appeal. On appeal, the plaintiffs argue[d] that the circuit court erred in dismissing their complaint because, they [said], the allegations in their complaint articulated a *953 breach-of-contract claim against ELG and because their complaint was not an ethics complaint against ELG, which, they contend, would have been subject to the exclusive jurisdiction of the Alabama State Bar. In response, ELG assert[ed] that the circuit court properly dismissed the plaintiffs' complaint because, ELG says, the circuit court did not have subject-matter jurisdiction over the plaintiffs' complaint."
157 So.3d at 877-79 (footnotes omitted).
On appeal, this Court disagreed with the circuit court's holding. We held that "[t]he 'crux' of the plaintiffs' claims [was] that ELG breached the attorney-employment agreement by allegedly taking as an attorney fee more than 40% of the settlement proceeds" and, thus, the plaintiffs' claims "[fell] within the subject-matter jurisdiction of the circuit court." 157 So.3d at 881. Unlike B.W.T. v. Haynes & Haynes, P.C., 20 So.3d 815, 822 (Ala. Civ. App. 2009), which ELG cited, "the 'crux' of the plaintiffs' case [was] not whether ELG's fee arrangement with the plaintiffs violated Rule 1.5, Ala. R. Prof. Cond." 157 So.3d at 881. We therefore reversed the circuit court's order of dismissal and remanded the matter for further proceedings.[2]
Following remand, ELG moved for a status conference to establish a discovery schedule and to consider class certification.[3] Shortly thereafter, the plaintiffs filed a "First Amended Class Action Complaint" that added to the previously pending individual and class-based claims a count against ELG pursuant to the Alabama Legal Services Liability Act, § 6-5-570 et seq., Ala. Code 1975. Additionally, the plaintiffs filed a motion seeking, after discovery, class certification pursuant to Rules 23(b)(2) and 23(b)(3), Ala. R. Civ. P.[4]
After numerous additional filings by the parties and the trial court's appointment of a special master, who recommended the denial of ELG's renewed dismissal request, on February 23, 2016, ELG filed a "Motion to Dismiss Class Claims or, Alternatively, for Partial Judgment on the Pleadings." In that motion, ELG sought the dismissal of only the plaintiffs' class-based *954 claims on the ground that the claims "require individualized inquiries" that would destroy the "commonality" required for class-based relief because, according to ELG, the contract at issue was ambiguous. Specifically, the parties disagree on whether the "Administrative Service Expense Charge" (hereinafter "the new charge") assessed to the plaintiffs was permitted under the terms of the attorney-employment contract, which allowed recoupment of ELG's "expenses," or whether the new charge was an additional "fee." ELG further maintained that the plaintiffs' proposed definition of a class, which included all past and present ELG asbestos clients who executed a contingency-fee contract, was both "overly broad" and "inconsistent with and contradicted by the allegations in the Complaint."
On April 11, 2016, ELG filed, as a "supplement" to its motion to dismiss, an "alternate" motion to strike the plaintiffs' class claims and allegations pursuant to Rules 12(f), 23(c)(1), and 23(d)(4), Ala. R. Civ. P., which, according to ELG, "provide a clear path for the Court to evaluate class claims at an early stage under the burden of proof and standard of review of Alabama Rule 23" and, where appropriate, to strike class allegations before the class-certification process.
Following a hearing-but without permitting the plaintiffs' requested discovery on the class-certification issue-the trial court granted ELG's motion to dismiss. The trial court agreed with ELG that the "[p]laintiffs' contracts with ELG are ambiguous regarding whether the 'Administrative Service Expense Charge' was an expense or should have been included in the 40% contingency fee." The trial court held:
"Specifically, the contract is ambiguous in at least three ways. First, the definition of expense is open-ended and ambiguous. Second, the client contracts are silent and ambiguous regarding how work related to probate, bankruptcy, and Medicare should be charged to the client. Third, the client contracts are ambiguous regarding whether post-settlement work done to make sure that claims that have already been recovered are paid out to the proper party is an expense or part of the contingency fee for prosecution and 'enforce[ment of] the said tort claim,' or outside the scope of the contract."
As a result of that ambiguity and of the particular nature of the asbestos claims themselves, including "the fact that the current plaintiffs are not even victims of asbestos injuries but instead are actually second or third generation descendants of the original clients who signed the fee agreements in 1992 and 1994" and that ELG's long-term representation could have given rise to "situation[s] ... not anticipated and addressed by the parties on the face of the contract," the trial court concluded that "individualized inquiry is required to resolve the ambiguity and delve into the state of mind of each party and determine what each party intended at the time of contracting" and that, therefore, such inquiry "destroys predominance and commonality and bars class ... breach-of-contract-based claims in this case." In sum, opining that no amount of discovery would alleviate the above-identified issues with the plaintiffs' class-based claims, the trial court granted ELG's motion to dismiss, "struck" the plaintiffs' claims for class-based relief, and held that the class-based claims were "denied."[5] The *955 plaintiffs appeal.[6]
Standard of Review
ELG contends that the trial court was authorized to "strike" the class allegations in the complaint under the authority of a combination of three rules: Rule 12(f),[7] Rule 23(c)(1), 8 and Rule 23(d)(4).[9] In support of this argument, ELG cites numerous federal court decisions explaining that Rule 12(f), Fed. R. Civ. P.; Rule 23(c)(1)(A), Fed. R. Civ. P.; and Rule 23(d)(1)(D), Fed. R. Civ. P., together can form the basis for striking class allegations in the pleading stage and before the class-certification process begins:
"As an initial matter, the authority to strike class allegations stems from Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D).... See Gray v. BMW of North America, LLC, 22 F.Supp.3d 373 (D.N.J. 2014) (citing Fed. R. Civ. P. 12(f) as authority for the District Court to strike class allegations); In re Paulsboro Derailment Cases, [Civ. No. 13-784, April 8, 2014] (D.N.J. 2014) ('A motion to strike class allegations implicates Federal Rules of Civil Procedure 12(f) and 23(c)(1) ( [A] ).... A further procedural vehicle is provided by Federal Rule of Civil Procedure Rule 23(d)(1)(D), which provides that a "court may issue orders that ... require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." '); see also 1 Joseph M. McLaughlin, McLaughlin on Class Actions § 3:4 (11th ed. 2014) (Noting that Federal Rule of Civil Procedure 23(d)(1)(D) 'expressly authorizes a motion to strike class action allegations by authorizing the court to issue an order "requiring that the pleadings be amended to eliminate allegations about representation of absent persons...." '[).] Rule 12(f) permits a district court to 'strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter,' and Rule 23(c)(1)(A) directs the court to make the class certification determination *956 '[a]t an early practicable time.' Fed. R. Civ. P. 12(f), 23(c)(1)(A).
"These Rules, together, provide authority for the Court to strike the class allegations from Plaintiffs' Complaint, if appropriate, even before Plaintiffs move for class certification. The Court of Appeals for the Third Circuit has acknowledged that there are a 'rare few [cases] where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met,' although, '[i]n most cases, some level of discovery is essential.' Landman & Funk PC v. Skinder-Strauss Assoc., 640 F.3d 72, 93, 93 at n. 30 (3d Cir. 2011). Class allegations may be stricken only when no amount of discovery will demonstrate that the class can be maintained. Goode v. LexisNexis Risk & Info. Analytics Group, Inc., 284 F.R.D. 238, 244 (E.D. Pa. 2012) (citing Thompson v. Merck & Co., Inc., [No. C.A. 01-1004, January 6, 2004] (E.D. Pa. 2004) ); see also Woodard v. FedEx Freight E., Inc., 250 F.R.D. 178, 182 (M.D. Pa. 2008) (noting that a 'district court will strike class allegations without permitting discovery or waiting for a certification motion where the complaint and any affidavits clearly demonstrate that the plaintiff cannot meet the requirements for a class action')."
Bell v. Cheswick Generating Station, Genon Power Midwest, L.P., No. 12-929, Jan. 28, 2015 (W.D. Pa. 2015) (not selected for publication in F. Supp. 3d).
No Alabama decisions are cited that have addressed the propriety of a motion to strike class allegations before class-certification discovery or the class-certification process. However, in the instant case, we are not required to determine such issue, because it does not appear that the trial court simply struck the plaintiffs' class allegations. Specifically, ELG's motion to dismiss requested that the trial court dismiss the plaintiffs' class claims "with prejudice." The trial court's order stated: "[ELG's motion to dismiss] is hereby granted. Plaintiffs' class allegations are hereby stricken and the claims denied." (Emphasis added.) It appears that, by stating that the class claims were "denied," the trial court was dismissing them with prejudice. Specifically, stating that the claims were "denied" is inconsistent with merely striking the claims or "requiring that the pleadings be amended" under Rule 23(d)(4). Further, we see no basis in this case for striking the class claims for containing "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f). Therefore, we treat the trial court's dismissal as pursuant to the initial ground specified in ELG's motion to dismiss: failure to state a claim under Rule 12(b)(6).
Generally, a Rule 12(b)(6) motion " 'should not be used to test the sufficiency of a complaint after a responsive pleading has been filed.' " Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 562 (Ala. 2005) (quoting Sims v. Lewis, 374 So.2d 298, 301 (Ala. 1979) ). However, "a defense of failure to state a claim upon which relief can be granted, although typically raised pursuant to Rule 12(b)(6), can be raised after an answer has been filed by moving for a judgment on the pleadings" under Rule 12(c), Ala. R. Civ. P. Pontius, 915 So.2d at 562.
This Court has discussed the distinction between the standard of review for a ruling based on Rule 12(c) and one based on Rule 12(b)(6) as follows:
"In Reed Elsevier, Inc. v. TheLaw.net Corp., 269 F.Supp.2d 942, 947 (S.D. Ohio 2003), the federal district court stated with regard to Rule 12(b)(6) and Rule 12(c), Fed. R. Civ. P.:
*957 " '....
" 'The difference between the two types of motions stems from when in the course of proceedings they can be raised. Motions brought under Rule 12(b)(6), indeed, under 12(b) generally, must be brought by a defendant "before pleading" (i.e., before filing its answer to the complaint). Motions brought under Rule 12(c) cannot be filed until "[a]fter the pleadings are closed" (i.e., after filing its answer). Still and all, the standard for reviewing Rule 12(c) motions is often identical to that used for reviewing Rule 12(b)(6) motions, given that Rule 12(c) can be invoked in a number of situations where a Rule 12(b) motion could have been, but was not, filed by the defendant. See Rule 12(h)(2) & (3) ; 5A Wright & Miller § 1368, at 514-17. Thus, often times, after a responsive pleading has been filed, a defendant will move to dismiss for failure to state a claim under Rule 12(c), even though there may be no need to refer to the responsive pleading, such that it would have been proper to move for dismissal under Rule 12(b)(6). In such an instance, it is proper to treat the motion in the manner as one brought pursuant to Rule 12(b)(6). See id., at 515....' "
Pontius, 915 So.2d at 561-62 (footnotes omitted).
ELG explicitly argued in the trial court that the class allegations failed to state a claim because, it said, the plaintiffs could not meet the requirements of Rule 23. Therefore, we will treat the motion as a Rule 12(b)(6) motion.
" 'On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.' "
Lloyd Noland Found., Inc. v. HealthSouth Corp., 979 So.2d 784, 791 (Ala. 2007) (quoting Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993) (citations omitted in Lloyd Noland )).[10]
Discussion
I.
As noted above, the trial court held that the attorney-employment agreement was ambiguous and that this ambiguity was fatal to the plaintiffs' class-allegation claims. Thus, the trial court dismissed the *958 class claims before the class-certification process began.
To maintain a class action, the trial court must find that questions of law or fact common to the plaintiff class members predominate over questions impacting individual members. Rule 23(a)(2) and (b)(3), Ala. R. Civ. P. This is difficult to show in the context of an action alleging breach of contract when the contract at issue is deemed ambiguous; in such a case, each individual class member may have differing interpretations of the ambiguous contract language and, thus, the finder of fact will have to determine how each individual plaintiff interpreted the language, resulting in determinations of individual issues predominating over the common issues. In University Federal Credit Union v. Grayson, 878 So.2d 280, 293 (Ala. 2003), this Court explained:
" 'Under some circumstances, this Court has held that the conclusion that a contract was ambiguous was fatal to a claim for class certification. Mann v. GTE Mobilnet of Birmingham, Inc., 730 So.2d 150, 155 (Ala. 1999) (failure to "satisfy the commonality requirement of Rule 23(a)(2) as to questions of fact, because the evidence necessary to resolve those questions of fact will vary from case to case"). See also Lackey v. Central Bank of the South, 710 So.2d 419 (Ala. 1998) (trial court did not abuse its discretion in decertifying a class, when it determined that the evidence of an ambiguity rendered class certification improper on a breach-of-contract claim) (plurality opinion).'
" Alfa Life Ins. Corp. v. Johnson, 822 So.2d 400, 404-05 (Ala. 2001).... Additionally, because resolving an ambiguity forces the finder of fact to determine how each individual class member interpreted the ambiguous language, an ambiguity may foreclose the conclusion that common issues predominate over individual issues. General Motors Acceptance Corp. v. Dubose, 834 So.2d 67, 72-73 (Ala. 2002)."
See also General Motors Acceptance Corp. v. Dubose, 834 So.2d 67, 72 (Ala. 2002) (noting that an "ambiguity prevents [the class representatives] from satisfying the 'commonality' requirement of Rule 23(a)(2), Ala. R. Civ. P., and forecloses the conclusion that 'common issues predominate' ").
"A contractual provision is ambiguous if it is reasonably susceptible of more than one meaning." FabArc Steel Supply, Inc. v. Composite Constr. Sys., Inc., 914 So.2d 344, 357 (Ala. 2005).
"[T]he question is not whether the parties have differing interpretations of allegedly ambiguous language; whether there is an ambiguity is for the trial court to determine. In Winkleblack v. Murphy, 811 So.2d 521, 525 (Ala. 2001), this Court stated:
" 'The question whether a contract is ambiguous is for a court to decide. State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293 (Ala. 1999). As long as the contractual terms are clear and unambiguous, questions of their legal effect are questions of law. Commercial Credit Corp. v. Leggett, 744 So.2d 890 (Ala. 1999). Thus, we apply a de novo review to a trial court's determination of the legal effect of an unambiguous contract term.'
"See also Woodall v. Alfa Mut. Ins. Co., 658 So.2d 369 (Ala. 1995).
"In Mann [v. GTE Mobilnet of Birmingham, Inc., 730 So.2d 150 (Ala. 1999) ], this Court determined that the language in GTE's contract that provided that customers would be billed 'per minute' was ambiguous, because the language was 'susceptible to more than one *959 reasonable interpretation by the various members of the proposed class.' 730 So.2d at 155. We held that Mann had not satisfied the commonality requirement because the evidence necessary to resolve questions of fact would vary from case to case. Id.
" 'An "instrument is unambiguous if only one reasonable meaning clearly emerges." ' Sealing Equip. Prods. Co. v. Velarde, 644 So.2d 904, 908 (Ala. 1994), quoting Reeves Cedarhurst Dev. Corp. v. First Amfed Corp., 607 So.2d 184, 186 (Ala. 1992)."
General Motors Acceptance, 834 So.2d at 72 (emphasis added).
In construing contractual language, this Court has observed that " 'the mere fact that a word or a phrase ... is not defined in [a document] does not mean that the word or phrase is inherently ambiguous.' " Lambert v. Coregis Ins. Co., 950 So.2d 1156, 1161 (Ala. 2006) (quoting Safeway Ins. Co. of Alabama v. Herrera, 912 So.2d 1140, 1143 (Ala. 2005) ). Cf. Grove Hill Homeowners' Ass'n, Inc. v. Rice, 43 So.3d 609, 614 (Ala. Civ. App. 2010) (noting that " 'an undefined word or phrase [does not] create an inherent ambiguity' ") (quoting Hipsh v. Graham Creek Estates Owners Ass'n, 927 So.2d 846, 849 (Ala. Civ. App. 2005) ). In the absence of a definition, "the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it." Safeway Ins., 912 So.2d at 1143.
The pertinent portion of the attorney-employment agreement states:
"This attorney employment agreement expresses the intent of the undersigned to employ Environmental Litigation Group, P.C., attorneys at law, Birmingham, Alabama, to represent the undersigned in the prosecution of a tort claim and cause of action for injuries suffered by the undersigned (or the undersigned's decedent) as a result of exposure to asbestos products. The undersigned hereby give to the said attorneys the exclusive right to take all legal steps necessary to enforce the said tort claim....
"In consideration of the services rendered by the said attorneys, the undersigned hereby assign and convey unto the said attorneys as their compensation the following present and undivided interest in the said claim or claims: 40% of collection from settlement or trial. No fee for services will be charged unless some amount is recovered."
The attorney-employment agreement, the plaintiffs argue, provides that the work performed by ELG is to be compensated through the 40% contingency fee. The agreement states that, in exchange for representing the client "in the prosecution of a tort claim ... for injuries suffered by the [client] (or the [client's] decedent)" and "the exclusive right to take all legal steps necessary to enforce the said tort claim," ELG was entitled to receive, "as [its] compensation," 40% of "collection from settlement or trial," and "no fee" would be charged "unless some amount is recovered." This part of the agreement specifies the work that ELG would perform-all legal steps necessary for the prosecution and enforcement of the claim-and that the client is charged nothing for this work until a recovery is had for the client.
The plaintiffs alleged in their complaint and on appeal that the new charge described in the February 23, 2012, memorandum ("the memorandum") is for "additional work" that should be part of the 40% contingency fee and that the new charge is thus an "extra attorney fee." The memorandum describes the nature of the new charge:
*960 "Environmental Litigation Group ('ELG') is devoted to achieving the best possible recovery in your case. There are certain unavoidable legal requirements that we have had to meet over the past seven years, and we must continue to do so, as the legal landscape has changed. In order to comply with these requirements most efficiently, there are certain services that our attorneys and staff provide that are in addition to the work performed under the terms of the attorney client contract. The contingency fee agreement provides that this additional fee will be deducted from your settlement(s). ELG is required to correspond with Medicaid and Medicare under the terms of the Secondary Payer in relation to potential subrogation (whether or not you have ever been covered by Medicaid or Medicare), administrate certain probate-related activities on behalf of deceased clients, and perform extensive work and research in determining if clients have filed for bankruptcy protection (whether or not you have ever filed for bankruptcy protection). The work required to fully comply with legal requirements relating to these three areas of service [is] very significant.
"Therefore, ELG has instituted an 'Administrative Service Expense Charge' of $250.00 for living clients and $600.00 for deceased clients, which have been applied to your account. Living clients who have been charged $250.00 and subsequently pass away will incur an additional offset cost of $350.00. Law firms which specialize in dealing with subrogation and bankruptcy matters typically charge hourly rates exceeding our charge for an attorney's time, which quickly trickles down to be additionally handled by another law firm's personnel at high hourly rates. A detailed study of the significant amount of time spent by ELG attorneys and staff working on these matters has proven that ELG's cost of this service to clients can easily exceed the Administrative Service Expense Charge. Finally, to have these matters handled by a firm other than ELG would quickly exceed our onetime charge, as these matters typically take several hours to deal with, and often must be revisited over what we believe will be the four year lifespan of the remainder [of] your case."
(Emphasis added.)
The memorandum describes "certain services that [ELG's] attorneys and staff provide" that are related to corresponding with Medicaid and Medicare, probate-related activities, and determining if clients have filed for bankruptcy protection. These services are described as "in addition" to the work performed under the attorney-employment agreement and are described as "extensive work" "required to fully comply with legal requirements relating to these three areas of service." It then describes three new, flat charges that are applicable to all clients. The charges for the services are described as an "additional fee." The memorandum further states that the cost of its attorneys and staff working on the issues described in the first paragraph might exceed the actual amount of the flat charge.
The plaintiffs, in their complaint, describe the new charge as a "flat fee" for "legal services necessary to enforce" the clients' claims. When these allegations are viewed in the light most favorable to the plaintiffs, and given the existence of the memorandum, the plaintiffs can prove a set of circumstances demonstrating that the services for which the new charge is assessed are work performed "in the prosecution of a tort claim," and part of the "legal steps necessary to enforce the said tort claim" and delivery of the "amount [that] is recovered" for the client. This, *961 under the attorney-employment agreement, is "compensat[ed]" by the 40% of "the collection" from settlement or trial.
ELG argues, as it did below, that the new charge is an "expense" the attorney-employment agreement specifically contemplated in a provision describing expenses. This "expense provision" states:
"The said attorneys are authorized to pay all expenses in this case, including but not limited to medical expenses, court costs, deposition expenses, long distance calls, investigation expenses, copy expenses, and the said attorneys are further authorized to deduct and withhold from any amount collected or recovered with respect to any such claim or claims the full amount of such expenses as reimbursement thereof (including estimated fixed amounts for such expenses as copy expense, long distance telephone calls and investigation costs). Such expense reimbursements are in addition to the legal fees payable to the said attorneys."
(Emphasis added.)
Viewing the allegations in the light most favorable to the plaintiffs, we conclude that the new charge does not meet what is described in the expense provision, even if such provision is ambiguous. An expense under this provision is only something for which ELG would receive a full "reimbursement"-an amount expended that is paid back from the award collected for the client. The memorandum, as the complaint alleges, shows that the new charge is not a reimbursement of amounts that were expended, but a flat charge for work and services unrelated to specific amounts that were expended and subject to full reimbursement. The memorandum describes the new charge, not as repayment for out-of-pocket expenses, but as a charge for work and services performed. Simply put, the new charge is not an "expense" as described by this portion of the attorney-employment agreement.[11]
ELG contends that the new charge is a "fixed amount" that fits within the following portion of the expense provision: "estimated fixed amounts for such expenses as copy expense, long distance telephone calls and investigation costs." This portion, however, simply explains that ELG may deduct or withhold an estimated fixed amount for certain things already described as expenses. It does not state that all fixed charges constitute expenses. Further, construing the allegations in the plaintiffs' favor, nothing before us suggests the work and services encompassed in the new charge are susceptible to a fixed estimated amount. In fact, the memorandum even describes the work or services performed as varying and notes that the costs of such work or services "can" exceed the amount of the new charge.
The trial court held that the attorney-employment agreements were "silent and ambiguous regarding how work related to probate, bankruptcy, and Medicare should be charged to the client." We disagree. The agreements provide that ELG would be compensated for the work and services performed by the 40% contingency fee. This general description would necessarily include all such narrowly defined work identified by the trial court; the failure of the agreement to address any specific type of work does not make it ambiguous. See *962 In re Laughlin, 265 F.2d 377, 378 (D.C. Cir. 1959) (denying attorneys additional compensation for defending a negligence judgment on appeal based on the conclusion that "in the absence of a specific provision in the contract for additional fees the contract must be construed to include the services rendered on appeal"). Again, work in prosecuting the clients' claims and taking the legal steps necessary to enforce the claims is compensated for by the contingency fee.
Finally, the trial court held that the attorney-employment agreements in general were ambiguous regarding whether post-settlement work done to ensure payment to the client is an expense, part of the contingency fee, or outside the scope of the contract. However, the agreement is to represent the client in the prosecution of the tort claim, ELG is assigned the right to "take all legal steps necessary to enforce" the claims, and no fees for services are charged unless the client recovers. Under the standard of review, nothing in the agreement suggests that ELG's obligation to enforce the clients' claims ends before recovery is had by its clients.
The relevant inquiry is whether, based on the nature of the work involved, the collection of the new charge was, under the plain language of the employment agreement, permitted by ELG as recoupment of its expenses under the contract terms or whether it was an improper attempt by ELG to recover an additional fee exceeding the 40% provided for in the parties' original agreement. At this point in the proceedings and under the standard of review, we see no ambiguity in the attorney-employment agreements on these issues. This holding negates the trial court's contrary conclusion as to the individualized inquiry necessary with regard to the plaintiffs' contract claims. We therefore reverse the trial court's order dismissing the plaintiffs' claims for class-based relief and remand the matter for further proceedings.
II.
The plaintiffs further challenge the trial court's alternative conclusion that the class definition included in the plaintiffs' amended complaint was "fatally defective." Specifically, the trial court's holding in this regard, which appeared in a footnote to the dismissal order, provided, in full:
"In addition, Plaintiffs' class definition is fatally defective. A 'proposed class definition must specify a particular group harmed during a particular time period via a particular manner.' Fisher v. Ciba Specialty Chemicals Corp., 238 F.R.D. 273, 301 (S.D. Ala. 2006). See also CVS Caremark Corp. v. Lauriello, 175 So.3d 596, 613 (Ala. 2014) (finding that the class, as defined, was 'overly broad'). The proposed class in this case includes all past and present ELG asbestos clients who signed contingent fee contracts, which is everyone: 'All clients with asbestos claims who were and are represented by ELG as attorneys under a contingent fee contract.' (Complaint at ¶ 5.) This class definition includes ELG clients who were never charged the Administrative Service Expense Charge, and thus, is overly broad."
The plaintiffs assert that such a finding was premature at the present state of the litigation. They include in their brief authority suggesting that "[r]eviewing the complaint alone is not normally a suitable method for determining whether a class eventually can be certified" and that "a sufficiently defined class is appropriately addressed after some development of the facts and under Rule 23's established protocol for weighing the propriety of class certification." College of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co., 585 F.3d 33, 41-42 (1st Cir. 2009).
*963 ELG counters that "a class definition, at a minimum, must limit the class to the group who suffered the alleged harm" and cites authority purporting to deny class certification on the ground that the class is "overly broad." (ELG's brief at p. 7) (citing Fisher v. Ciba Specialty Chems. Corp., 238 F.R.D. 273, 301 (S.D. Ala. 2006), and CVS Caremark Corp. v. Lauriello, 175 So.3d 596, 613 (Ala. 2014) ).[12] ELG further contends that because the plaintiffs allegedly failed, in the trial court, to oppose its motion on this ground, the plaintiffs have waived any such challenge-and more specifically a challenge on the ground that such a determination was premature-for purposes of appeal.
Initially, we note that we are unable to determine from the face of the dismissal order the extent to which the trial court relied on this apparent aside as alternate support for its decision to dismiss the plaintiffs' class-based claims. We are, however, unpersuaded by ELG's assertion that the plaintiffs waived, for purposes of appeal, their prematurity challenge. To the contrary, the transcript of the dismissal hearing makes clear that, during that proceeding, the parties repeatedly agreed that the "one issue for the [trial] Court to decide" was whether "[the] contract [was] ambiguous." More specifically, according to ELG, "the only thing [it was] asking the [trial] Court to look at" was "the threshold issue on the class-certification issue, [namely] whether the contract is ambiguous." Counsel for the plaintiffs subsequently agreed that "[a]mbiguity ... [was] the heart of the issue." Therefore, the plaintiffs presumably did not oppose the overbreadth argument as premature because it was apparent that the only issue for consideration was the alleged ambiguity in the attorney-employment agreement. As a result, we are unable to agree that the plaintiffs waived a challenge to the dismissal of their class-based claims on an alternate ground.
Further, we agree that any challenge regarding the sufficiency of the plaintiffs' class definition appears premature. Moore v. Walter Coke, Inc., 294 F.R.D. 620, 627 (N.D. Ala. 2013) ("[S]triking a class claim before a motion for certification (and before the benefit of pre-certification discovery) is rare."). To avoid pre-certification dismissal, Rule 23 requires only that class representatives propose a class definition that is objectively ascertainable, i.e., "to determine who will be bound by rulings once the class is certified," and that only "[w]here a proposed class definition ... is so amorphous that it is not ascertainable" is dismissal appropriate on a motion by the defendant. See id. at 627, 624-25. See also id. at 626 ("When other courts have dismissed a plaintiff's complaint on the pleadings (i.e., before a motion for certification has been filed or any preliminary discovery taken place) based on ascertainability, the class definitions have been intrinsically indefinite."). "The Eleventh Circuit has said that, '[i]n a class action, it is sufficient that a complaint generally give the defendant notice of the nature and scope of the plaintiffs' claims; it is not necessary that the class representatives plead evidence or otherwise meet any burden beyond the minimal Rule 8 *964 standard.' " Id. at 631 (quoting United States v. Baxter Int'l, Inc., 345 F.3d 866, 882 (11th Cir. 2003) ).
Further, as the plaintiffs note, in Connecticut General, supra, the United States Court of Appeals for the First Circuit concluded that where the plaintiffs' complaint "plausibly allege[d] claims for class-wide relief," that pleading was sufficient even in the "absence of any sufficient class definition." 585 F.3d at 40. Whether the class is appropriately defined is addressed in the later class-certification process. In sum, we are unable to agree that the initial class definition proposed by the plaintiffs, even if in need of subsequent clarification during discovery and before class certification, is, at this posture, so facially indeterminate to support dismissal.[13] See Gray v. BMW of N. America, LLC, 22 F.Supp.3d 373, 386 (D.N.J. 2014) ("Motions to strike class allegations from a pleading are disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety.").
Conclusion
In consideration of the foregoing, the trial court's judgment is reversed and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, C.J., and Bolin, Parker, Main, Wise, Bryan, and Sellers, JJ., concur.

The record reflects that, during the pendency of these proceedings, Mary Hall died and was succeeded as executor of the estate of Adolphus Hall, Sr., by Joyce Hall, the daughter of Adolphus. Subsequent to her appointment as successor executor, the plaintiffs moved the trial court to substitute Joyce for Mary as a named plaintiff. Nothing in the record suggests that the trial court ruled on that motion before the appeal. Therefore, we retain the style of the case as it appeared in the trial court.

The record suggests that, during the pendency of this matter and approximately four days after this Court's decision in Hall I, ELG initiated separate litigation in the Jefferson Circuit Court (case no. CV-2014-902655) against the plaintiffs' counsel alleging "intentional interference with business or contractual relations and abuse of process." The two matters were, on motion of the plaintiffs and with the consent of ELG, consolidated for purposes of discovery. The record further suggests that all proceedings in case no. CV-2014-902655 have been stayed and the matter placed on the court's administrative docket pending resolution of this appeal.

According to ELG's motion, it also contemporaneously filed both an answer and a counterclaim alleging breach of contract. Neither of those pleadings, however, appears to have been included in the record on appeal.

In response, ELG again moved, pursuant to Rule 12, Ala. R. Civ. P., to dismiss the plaintiffs' amended complaint on numerous grounds and for sanctions pursuant to Rule 11, Ala. R. Civ. P. In support of those requests, ELG explained the imposition of the challenged expenses and reiterated its belief that recoupment of those expenses was contemplated by the attorney-employment agreement and allegedly informally preapproved by the Alabama State Bar. ELG further argued that the plaintiffs' complaints were not only baseless but also alleged only around $900 in actual damages, and, according to ELG, the plaintiffs' lawyers were attempting to "turn [the action] into to a money-making machine for the Plaintiffs' lawyers." Finally, it argued that the legal-malpractice count, which it says was filed more than two years after the occurrence or omission on which it was based, did not relate back to the original complaint and was, therefore, untimely. See § 6-5-574, Ala. Code 1975; Rule 15(c)(2), Ala. R. Civ. P. No ruling on this motion is before us in this appeal.

The trial court also concluded that, under Alabama law, "unjust enrichment claims depend on the particular facts and circumstances of each class member's case and are unsuitable for class treatment." On appeal, the plaintiffs do not challenge the trial court's holding as to the unjust-enrichment claim.

See Mann v. GTE Mobilnet of Birmingham Inc., 730 So.2d 150, 154 (Ala. 1999) ("Although an order denying class certification is an interlocutory order, it is nevertheless an appealable 'final' order because it 'finally determines a claim of right separate from and collateral to the rights asserted in the cause of action' and makes further judicial proceedings in the action ineffective.") (quoting Butler v. Audio/Video Affiliates, Inc., 611 So.2d 330, 331 (Ala. 1992) (emphasis omitted)). In this case, the trial court's order dismissing the class allegations is the functional equivalent of denying class certification.

Rule 12(f) provides:
"Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within thirty (30) days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Rule 23(d)(4) provides: "In the conduct of actions to which this rule applies, the court may make appropriate orders ... requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly ...."

Although the parties' various filings below included exhibits, which do not appear to have been specifically excluded by the trial court, the dismissal motion on which the present appeal is based appears, as the trial court noted, to rely solely on documents referenced in and/or relied upon by the plaintiffs' complaint, namely the attorney-employment contracts executed by the decedents of the named plaintiffs and the February 23, 2012, memorandum imposing the new charge. See, e.g., Donoghue v. American Nat'l Ins. Co., 838 So.2d 1032, 1035 (Ala. 2002) (" ' "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiffs claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." ' ") (quoting Wilson v. First Union Nat'l Bank of Georgia, 716 So.2d 722, 726 (Ala. Civ. App. 1998), quoting other cases).

ELG might ultimately produce evidence that shows, despite the characterization of the new charge by the complaint and the memorandum, that it actually constituted an expense as described in the attorney-employment agreement. At this point in the proceedings, however, the allegations in the complaint, which are confirmed by the memorandum, show that the plaintiffs might possibly prevail on their allegations.

ELG's reliance on Lauriello appears misplaced. Specifically, although we, in Lauriello, agreed that the proposed class definition was "impermissibly broad" to the extent that it included potential class plaintiffs who were allegedly not damaged by the defendants' purported tortious conduct, we specifically noted that the trial court's certification order had appropriately limited certification solely to those damaged by the challenged conduct. 175 So.3d at 613. We see nothing that would prevent, if necessary, a similar adjustment by the trial court in the present case when the matter proceeds to class certification.

Our decision is not intended as a commentary upon the trial court's eventual consideration of the class-certification issue.